STATE OF NORTH CAROLINA v. FRANKIE ROSEMAN, ALIAS FRANKLIN ROSEMOND

No. 24

(Filed 10 November 1971)

1. Criminal Law § 104— motion for nonsuit — consideration of evidence

On motion for judgment of nonsuit, all admitted evidence favorable to the State, whether competent or incompetent, must be considered and must be deemed true.

2. Criminal Law § 106— motion for nonsuit — question presented

On motion for judgment of nonsuit, the question for the court is whether there is substantial evidence to support a finding both that an offense charged in the bill of indictment has been committed and that the defendant committed it.

3. Rape § 17; Criminal Law § 9— assault with intent to commit rape — sufficiency of evidence — aiding and abetting.

State's evidence was sufficient to support a jury finding that defendant was a participant in an assault upon a female with intent to commit rape; it is immaterial whether defendant personally intended to rape the female if he, being present, aided and abetted his companions in their assault with such intent.

4. Rape § 18— assault with intent to commit rape — instructions on lesser offense of assault on a female

Trial court, in a prosecution for assault on a female with intent to commit rape, was not required to instruct the jury on the lesser included offense of assault on a female, where all the evidence relating to the assault tended to show that the purpose of the assailants was to commit rape, and there was no evidence that the female was assaulted for any other purpose or for no purpose.

State v. Roseman

5. **Rape § 18; Indictment and Warrant § 17— assault with intent to commit rape — instruction as to date of offense — question of variance between instruction and indictment**

In a prosecution for assault on a female with intent to commit rape, an instruction which gave the date of the offense as 24 April 1970 was not prejudicially erroneous on the ground that the indictment alleged the offense to have occurred on 25 April 1970, where (1) all of the evidence was to the effect that the girl who was assaulted and her escort went to a school dance on the evening of April 24, that they both left the gymnasium around midnight, and that the assault occurred shortly thereafter; (2) the defendant did not claim an alibi; and (3) the defendant admitted to the investigating officer that he assaulted the girl.

6. **Criminal Law § 76— admission of written confession into evidence — removal of introductory paragraph**

The removal of the introductory paragraph from defendant's written confession, prior to the introduction of the confession into evidence, was not prejudicial to the defendant, where the paragraph merely contained language that the defendant was making his statement after being advised of his rights and without any threats or promise of reward being made to him.

7. **Criminal Law § 76— admissibility of confession — sufficiency of court's finding of voluntariness**

In a prosecution for assault on a female with intent to commit rape, findings by the trial court that the minor defendant's confession to the crime was freely, voluntarily, and understandingly made, *held* supported by the evidence on the voir dire, especially where the defendant himself testified on voir dire that he had not been threatened or coerced into making the statement, that he was not scared of the officer, and that he told the officer the truth.

8. **Criminal Law § 75— contention that officer's interrogation of defendant was too brief**

Defendant's novel contention that the investigating officer did not take enough time in interrogating him, thereby violating his constitutional rights, *held* without merit.

APPEAL by defendant from *Lupton, J.,* at the 23 November 1970 Criminal Session of FORSYTH, heard prior to determination by the Court of Appeals.

Upon an indictment, proper in form, the defendant was tried upon the charge of assault with intent to commit rape. He was found guilty as charged and sentenced to ten to fifteen years in the State's Prison. This is a companion case to *State v. Harold Williams,* decided this day, although the two cases were tried separately before different judges and different juries. In the present case, the State's evidence as to the circumstances

and details of the assault was substantially the same as is set forth in the Williams case.

Neither the girl nor her escort was able to identify the present defendant as one of the five assailants. The only evidence so identifying him was a statement by him to Police Detective Dalton following his arrest upon a warrant duly issued. The substance of his statement, put in evidence by the State, after a voir dire in the absence of the jury, was that he, Harold Williams and three others rode together to the Reynolds High School and were together on the school grounds, the scene of the assault; seeing the girl and her escort approaching, the defendant and his companions told them that they were prison escapees (a false statement) and wanted to go to the airport; the five Negroes then separated the girl from her escort, two of them taking her escort a short distance away and the other three remaining with the girl; they disrobed the girl; thereupon, one of the defendant's partners instructed him to go up the hill where the girl's escort and his custodians were; the defendant did so but returned, and upon his return "the girl's face was bloody" and the defendant started walking away; his four companions then came by, picked him up and carried him home. The girl's escort testified that one of her five assailants stuttered in response to a question by Williams concerning a gun. The defendant has an impediment in his speech.

The defendant did not testify and offered no evidence at his trial, except that he and his father testified in the absence of the jury upon the voir dire with reference to the giving of the defendant's statement. At the trial the defendant was represented by his privately retained counsel. The same counsel was appointed by the court to represent him upon this appeal, the defendant having been found to be an indigent subsequent to the trial and giving notice of appeal. The only witness for the State, other than the girl and her escort, was Officer Dalton who testified:

Following the defendant's arrest and the service upon him of a warrant charging him with assault with intent to commit rape, he read to the defendant a statement of his rights. This statement, which was put in evidence, was the complete and customary Miranda warning. The defendant then stated that he understood what his rights were, but did not want to sign a

waiver of them and wanted to telephone his father. Officer Dalton then took the defendant into an adjoining room and permitted him to make a telephone call. He then brought the defendant back to the interrogation room. There the defendant signed a waiver of his rights, after which he made an oral statement. He was then taken before a secretary of the police department and made a statement before her, which she typed and he signed. This was the statement subsequently introduced in evidence by the State and summarized above.

The waiver so signed by the defendant was printed or typed upon the same paper as the statement of rights so read to him. It stated that the defendant had read the statement of his rights and understood what they were, that he was willing to make a statement and answer questions, that he did not want a lawyer at that time, that no promises or threats had been made to him and no pressure or coercion applied by anyone, and the defendant understood and knew what he was doing. Upon the State's asking that the waiver of rights be marked as an exhibit, the defendant objected and requested a voir dire, which was conducted in the absence of the jury.

Upon the voir dire, Officer Dalton testified:

After the defendant made the telephone call to someone, he made a statement to the officer. At that time he made no request for counsel and gave no indication of unwillingness to make a statement. Officer Dalton made no threats to the defendant, nor did anyone else in his presence. No promises of leniency were made to the defendant in return for his statement. The defendant, in the officer's opinion, was not under the influence of alcohol or drugs. Following the oral statement, Officer Dalton carried the defendant to the secretary's office where the defendant made a statement, which was typed by the secretary. Officer Dalton handed the typewritten statement to the defendant and the defendant held it in position as though reading it. After the defendant finished reading it, Officer Dalton asked him if he desired to make any changes or corrections therein. The defendant replied in the negative and signed the statement in Officer Dalton's presence. The defendant was arrested shortly after 5 p.m., the warning of his rights was read to him by Officer Dalton at 5:22 p.m., the defendant started giving his statement to the secretary at 6:10 p.m., the dictation thereof

required five to seven minutes and the typing just a few minutes.

The statement of rights so read to the defendant, the defendant's signed waiver and the defendant's signed statement concerning the offense were offered in evidence on the voir dire. At the top of the statement concerning the offense appeared the following:

> "April 29, 1970 6:10 P. M.
> "STATEMENT OF FRANKLIN ROSEMOND, CM, Age 17, 750 E. Clemmonsville Rd

> "I, Franklin Rosemond, make the following statement to Detective G. T. Dalton and Detective L. L. Benbow, whom I know to be Police Officers for the Winston-Salem Police Department. I make this statement after being advised of my rights and signing a waiver of rights, without any threats or promise of reward being made to me."

Officer Dalton further testified on the voir dire as follows:

Following the telephone call, made by the defendant at 5:25 p.m., the defendant was asked by Officer Dalton if he wanted to sign the waiver of rights and he replied in the affirmative. He thereupon signed it, Officer Dalton noting the time, 5:28 p.m., thereon. Officer Archer and Officer Dalton were present when the defendant made the telephone call. Officer Dalton did not talk by telephone to the defendant's father. He does not recall whether Officer Archer did so. After the defendant signed the waiver of rights, Officer Dalton asked what happened on the night of the assault and the defendant made an oral statement to Officer Dalton in the presence of Officer Archer. He was then carried to the secretary before whom he again made his statement in the presence of Officer Dalton. The secretary typed the statement in the presence of the defendant and Officer Dalton. The above quoted first paragraph of the typed statement was not spoken to the secretary by the defendant. After the typed statement was prepared, it was handed to the defendant, he indicated that he had read it and desired to make no change in it and signed it.

The defendant testified on the voir dire as follows:

He first saw the waiver after he had made his statement and signed it, Officer Dalton having told him to read it and

sign it. Prior to that, Officer Dalton had stated the defendant's rights to him. He requested permission to call his father. Officer Dalton told him to tell his part, his companions having told what they had to tell. Prior to telling the defendant of his rights, Officer Dalton had asked him what happened at the scene of the assault. He started reading the statement after the secretary typed it, but Officer Dalton took it from him before he had finished. He signed the statement. He had not telephoned his father at the time he signed either the statement or the waiver, being permitted to call his father after he had so signed the papers. Officer Dalton also talked to his father on the telephone. His father came to the jail fifteen to thirty minutes after the telephone conversation.

The defendant further testified on the voir dire:

"I did not lie to the police officers when I talked to them. I told them the truth." He is seventeen years of age and in the tenth grade at Parkland High School in Winston-Salem. He could have read the typewritten statement which he signed but he did not. He was looking at it. He was not threatened by Officer Dalton and was not scared of him. No police officer mistreated him, threatened him or beat him and he was not afraid of them. He did not include in his oral statement to the secretary the first paragraph of the written statement above quoted.

The defendant's father testified on the voir dire:

He learned of the defendant's arrest when the officer called him. The person who talked to him on the telephone did not identify himself but informed the witness that his son was charged with attempted rape. He heard the defendant say, "Daddy" on the telephone. He arrived at the detective's office fifteen minutes after the telephone call. Detective Dalton greeted him at the door and told him his son was involved in some trouble. The defendant walked out into the lobby and they talked. The defendant did not tell his father at that time that he had signed a statement.

The defendant, recalled on the voir dire, testified:

The officer told him to tell what happened because it could help him in court but said he wouldn't guarantee that it would

help him. At the time he signed the statement, he did not know it could be used in court against him.

Officer Dalton, recalled on the voir dire, testified:

The defendant signed the waiver before making any statement. The oral statement to Officer Dalton was substantially the same as the written statement transcribed by the secretary. He did not tell the defendant that to make a statement might help him.

At the conclusion of the voir dire, the court found: The defendant was arrested on a valid warrant; he was brought to the Detective Division of the Police Department where Officer Dalton read to him his rights (the finding setting these out in detail); thereafter the defendant said he understood his rights; he did understand them; he intelligently, understandingly, freely, voluntarily and without any promises or threats or duress waived the said rights; thereafter he intelligently, understandingly, freely, voluntarily, and without any promises or threats or duress made an oral statement to Officer Dalton and dictated a statement to a secretary, this being the State's exhibit, except for the first paragraph; Officer Dalton did not tell the defendant that if he made a statement it might help him, but he could not guarantee it. Thereupon, the court concluded that both the oral statement and the written statement, with the exception of the first paragraph of the latter, were admissible in evidence and overruled the objections of the defendant thereto.

Thereupon, Officer Dalton testified, in the presence of the jury, to the same effect as his testimony upon the voir dire. He identified the waiver and the statement, signed by the defendant. These were admitted into evidence over the defendant's objection, the above quoted first paragraph of the typewritten statement having first been cut therefrom pursuant to the order of the court.

The court instructed the jury that it might return one of two verdicts: Guilty of an assault with intent to commit rape, as charged in the bill of indictment, or not guilty. The defendant assigns as error, among other things, the court's failure to instruct the jury that it might return a verdict of guilty of assault on a female.

*Attorney General Robert Morgan and Assistant Attorney General Thomas B. Wood for the State.*

*Annie Brown Kennedy for the defendant.*

LAKE, Justice.

[1-3] The defendant's Assignments of Error 5 and 6 are to the failure of the court to grant his motion for judgment of nonsuit. Upon such a motion, all admitted evidence favorable to the State, whether competent or incompetent, must be considered and must be deemed true. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Stallings,* 267 N.C. 405, 148 S.E. 2d 252; *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777. The question for the court is whether there is substantial evidence to support a finding both that an offense charged in the bill of indictment has been committed and that the defendant committed it. *State v. Cutler, supra; State v. Bass,* 253 N.C. 318, 116 S.E. 2d 772. The evidence in this record is clearly sufficient to support a finding that the offense charged in the bill of indictment was committed and that the defendant was a participant therein. It is immaterial whether he, personally, intended to rape the girl if he, being present, aided and abetted his companions in their assault with such intent. These assignments of error are without merit.

[4] The defendant's Assignments of Error 7 and 9 are to the failure of the court to instruct the jury that it could find the defendant guilty of assault on a female, a lesser offense included within the crime charged in the indictment. Where all of the evidence tends to show that the offense committed, if any, was that charged in the bill of indictment and there is no evidence tending to show the commission of a lesser, included offense, except insofar as it is a necessary element of the offense charged, the court is not required to submit for the jury's consideration the possibility of a verdict of guilty of such lesser, included offense, or to instruct the jury concerning such lesser offense. *State v. Bridges,* 266 N.C. 354, 146 S.E. 2d 107; *State v. Jones,* 264 N.C. 134, 141 S.E. 2d 27; *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545; *State v. Lamm,* 232 N.C. 402, 61 S.E. 2d 188. All of the evidence in the present record concerning the assault upon the girl tends to show that the purpose of the assailants was to commit rape. There is no evidence what-

State v. Roseman

ever tending to show that she was assaulted for any other purpose, or for no purpose. Under these circumstances, it was not error to instruct the jury that they might return either a verdict of guilty of assault with intent to commit rape or a verdict of not guilty. These assignments of error are without merit.

[5] Assignment of Error No. 8 is that the court instructed the jury that if they found from the evidence and beyond a reasonable doubt, that "on the twenty-fourth day of April, 1970" the defendant assaulted the girl (the other elements of the offense being included in the instruction), it would be the jury's duty to render a verdict of guilty as charged in the bill of indictment. The alleged error is that the indictment states that the offense occurred on the 25th of April 1970. All of the evidence is to the effect that the girl and her escort went to the dance on the evening of April 24th and left the gymnasium, wherein the dance was held, about midnight and that the assault occurred shortly thereafter. The defendant does not claim an alibi. His statement to the investigating police officer was an admission that he participated in the assault. The portion of the court's charge of which he now complains could not have prejudiced him in any way. There is no merit in this assignment of error.

[6] Assignments of Error 3 and 4 are to the admission in evidence of the typewritten statement signed by the defendant after the court had caused to be cut off from the statement, as originally signed, the first paragraph, which paragraph is quoted in the foregoing statement of facts. The record shows that the court's reason for withholding this paragraph from the jury was that the evidence, on the voir dire examination, showed that these words were not spoken by the defendant to the police secretary but were a mere introductory form customarily used by the Police Department in the writing of such statements. While the jury might well have been permitted to see the entire typewritten statement, since all of the evidence is to the effect that the statement in its entirety was submitted to the defendant for his inspection and he, thereupon, signed it, it is obvious that the withholding of the paragraph in question from the jury's consideration could not possibly have been prejudicial to the defendant. There is no suggestion in the record that the defendant requested that this paragraph remain

on the statement in the event that the jury was to be permitted to see or hear the remainder. There is no merit in these assignments of error.

[7] The defendant's Assignments of Error 1 and 2 are directed to the court's findings upon the voir dire and to the admission in evidence of the waiver of rights signed by the defendant, the statement of his rights which Officer Dalton testified he read to the defendant and the defendant's signed statement concerning his participation in the offense charged. The court's findings are supported by evidence received upon the voir dire and are, therefore, conclusive upon appeal. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581; *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511; *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *State v. Inman,* 269 N.C. 287, 152 S.E. 2d 192; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1. The defendant's own testimony on the voir dire was to the effect that he was not threatened or coerced into signing either the waiver of his rights or the statement concerning his participation in the offense charged. He testified that he was not scared of the investigating officer. The evidence is clear that he could read and that he had the opportunity to read both the waiver and the statement concerning his participation in the offense charged. He testified on the voir dire that he told the officer the truth.

[8] In his brief the defendant contends that Officer Dalton's notes and testimony show the whole sequence of events, beginning with his arrest and culminating in his signing of the statement, consumed approximately one hour. His contention that the officer did not take enough time in the interrogation, and thereby violated the defendant's constitutional rights, is a novel variation upon the current theme song of criminals who have made in-custody confessions. The usual contention is that the confession was obtained by prolonged interrogation, wearing down the suspect's will and so exhausting him that, hungry, frightened and weary, he was coerced into a confession he would not otherwise have made. The novelty of this defendant's variation of the theme does not confer any merit upon it. There is nothing to show that Officer Dalton was told that the defendant's father was en route to the police station or that the defendant wished to defer further conversation until his father arrived. These assignments of error are overruled.

No error.