STATE OF NORTH CAROLINA v. WINSTON FRED WILLIAMS

No. 72

(Filed 6 May 1980)

**Burglary and Unlawful Breakings § 5; Rape § 5— first degree burglary—second degree rape—sufficiency of evidence**

The evidence was sufficient to support defendant's conviction of first degree burglary and second degree rape.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from *Martin, J.,* 8 October 1979 Regular Criminal Session of WAKE Superior Court.

Defendant was charged in bills of indictment proper in form with the second-degree rape of Ms. Nancy Sue Grant and the first-degree burglary of her apartment. He entered a plea of not guilty to each charge.

At trial[1], the State offered evidence summarized in pertinent part as follows:

On 5 December 1978, Ms. Grant was a registered nurse employed at Rex Hospital in Raleigh, North Carolina. After getting off duty at 11:00 p.m. on said date she returned to her apartment complex after taking a co-worker home. Before going to her own apartment, Ms. Grant stopped to check her mailbox. As she did, she noticed a light blue sedan with its passenger door open parked nearby. A beared man wearing a blue shirt was leaning over near the car.

Ms. Grant picked up her mail and drove on to her apartment. After going inside, she closed her front door, locked it, and put on the security chain. Shortly . thereafter, the doorbell rang and someone started knocking at the front door. She turned on the

---

1. This case was called for trial originally on 4 September 1979 in Wake Superior Court, Martin, J., presiding. The first trial ended in a mistrial.

light in her living room and went to the door. She turned the door knob and slightly opened the door without removing the door chain. As she did, a man broke through the door, pulling the security chain out of the door frame. Ms. Grant screamed at his entry, but he put his hand over her mouth and slammed the door shut. As the intruder kept his hand over her mouth, he talked with her, apparently trying to calm her down. Throughout this time, he remained standing behind the nurse, and she was unable to see his face.

Taking his hand off of her mouth, the assailant ordered Ms. Grant to stand flat against the door. All the while, he remained behind her, talking with her, saying that he would not hurt her. As yet, she had still not seen him face to face, though she noticed he was wearing black gloves. Despite her pleas to leave the apartment and let her go, the intruder remained, continuing to talk to her as he restrained her. After the passage of an indeterminate period of time, he directed Ms. Grant into her bedroom and ordered her to remove her clothes. Despite Ms. Grant's protestations, he forced her to get into bed with him.

After remaining in bed with her for a short while, the assailant blindfolded Ms. Grant and proceeded to kiss and caress her, forcing her to submit to the act of cunnilingus. Thereupon, she was ordered to put on a nightgown. When she had done so, the man removed her blindfold and directed her to go into the living room again. Ms. Grant, seeing the intruder for the first time, identified him as defendant. At that time he was wearing a blue shirt, black pants, and black shoes.

Defendant sat with Ms. Grant on the couch in the living room and talked with her. After a while, he directed her to sit on his lap, saying that he wanted to make love to her and that she was going to ask him to do so. If she did not, he was going to rape her. She complied with the demand, and defendant began to caress her.

Defendant thereupon forced her to go back to the bedroom and get in bed. He then removed his clothing, got in bed, and raped her. After the assault had been completed, defendant allowed Ms. Grant to go into her bathroom, whereupon she locked the door and refused to come out. After defendant demanded that she come out, saying that she was no match for him, she emerged

from the bathroom. While defendant dressed, he continued to talk with her, asking if she intended to call the police. He kissed her again and left the apartment. As soon as he walked out, Ms. Grant locked the bedroom door. After waiting for three or four minutes, she came out of the bedroom and called a friend.

On 6 December 1978, after receiving medical treatment at Wake Medical Center, and on several occasions thereafter, Ms. Grant perused mug books provided her by the Raleigh Police Department without identifying her assailant. She was also unable to formulate a composite picture of the rapist. On 6 March 1979, she spotted a photograph of defendant in a mug book and identified him as the man who had raped her.

Defendant took the stand in his own behalf and denied that he had raped Ms. Grant. He stated that on the night of 5 and 6 December 1978 he was in Durham because of problems he had been having with a new employee. A number of defense witnesses testified as to defendant's good reputation in the community.

Defendant was convicted of second-degree rape and first-degree burglary. He was sentenced to life imprisonment on the charge of first-degree burglary and to a term of 25 years to life on the charge of second-degree rape. The sentences are to run concurrently.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General H. A. Cole, Jr., for the state.*

*Brian A. Tenney for defendant-appellant.*

BRITT, Justice.

Counsel for defendant excepted to the judgment entered and perfected his appeal. The record on appeal contains no assignments of error. Without presenting any arguments in his brief, defense counsel has submitted the record on appeal with a request that we examine the record to the end that we might determine whether any prejudicial error occurred at defendant's trial.

While Rule 28 of the Rules of Appellate Procedure specifies that our view is limited to questions which are supported by arguments and authorities cited in the brief, we may suspend or vary the Rules in order to prevent manifest injustice or expedite

a decision in the public interest. *State v. Adams*, 298 N.C. 802, 260 S.E. 2d 431 (1979); N.C. R. App. P. 2.

Though no argument has been presented to us for our consideration, because of the seriousness of the offenses charged and the severity of the punishment imposed, we have elected to examine the entire record. On the basis of our examination, we conclude that the cases were properly presented to the jury for decision since there was substantial evidence of every essential element of the offenses charged and that defendant was the perpetrator of the offenses. *See State v. Adams, supra; State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971). Furthermore, we are unable to find any prejudicial error in the admission of evidence. The court in its instructions correctly explained and applied the applicable law to the evidence presented.

We, therefore, hold that there was no error committed which would warrant the disturbing of the verdicts and judgments.

No error.

Justice BROCK did not participate in the consideration or decision of this case.