STATE OF NORTH CAROLINA v. REMBERT WAYNE STANLEY

No. 209A83

(Filed 6 March 1984)

1. Criminal Law § 98.2— exemption of witnesses from sequestration order

In a prosecution for rape of defendant's six-year-old stepdaughter, the trial judge did not abuse his discretion when he permitted a social services worker and a juvenile officer who testified for the State to remain in the courtroom during the child's testimony while ordering that all other persons, including defense witnesses, remain outside the courtroom. G.S. 15A-1225.

2. Criminal Law § 165— failure to object to remarks by court

By failing to object at trial, defendant waived his right to challenge remarks made by the trial judge concerning his excusal of two State's witnesses from a sequestration order.

3. Criminal Law § 87.1— six-year-old rape victim—leading questions

The trial court did not improperly permit the prosecutor to ask a six-year-old rape victim leading questions to establish the essential elements of the rape since (1) many of the questions at issue were not leading in that they did not suggest the proper response, and (2) it was within the discretion of the trial court to permit leading questions of a six-year-old witness concerning sexual matters.

4. Criminal Law § 73— exclusion of hearsay testimony

In a prosecution for rape of defendant's six-year-old stepdaughter, cross-examination of the victim as to whether her mother did not want defendant to come back called for hearsay testimony and was properly excluded.

State v. Stanley

**5. Criminal Law § 89.2— instruction on corroborating evidence—no expression of opinion**

The trial court did not express an opinion on the evidence in instructing the jury that testimony was "offered and admitted for the sole purpose of corroborating or strengthening the testimony of [the victim] if you find that it does or tends to do so."

**6. Rape and Allied Offenses § 4.2— competency of expert medical testimony**

In a prosecution for the rape of a six-year-old child, an expert in pediatrics who had twice examined the child was properly permitted to testify that the child's unusually large vaginal opening was "compatible with penetration of the vagina." Further, testimony by an expert in obstetrics regarding the size of the victim's vagina and the generally accepted means whereby venereal warts such as those he observed on the victim are transmitted was well within the bounds of permissible medical expert testimony.

**7. Rape and Allied Offenses § 4— six-year-old rape victim—competency of testimony by schoolteacher**

In a prosecution for rape of a six-year-old child, testimony by the child's schoolteacher that the child did not do well in the beginning of the 1982 school year but noticeably began to improve by the middle of October and is a good, average student was competent with respect to the condition of the child during the period of time she was physically examined and questioned after defendant was arrested in September 1982.

**8. Rape and Allied Offenses § 5— sufficiency of evidence of penetration**

There was sufficient evidence of penetration to require submission to the jury of a charge of first degree rape of a six-year-old child where the child testified directly, unequivocally, and knowingly that defendant had sexual intercourse with her; her testimony was corroborated by her statements to other witnesses; medical expert testimony confirmed the compatability of the child's testimony with her physical condition; and any contradictions or ambiguities in the record regarding penetration have to do with the question of degree only and not with whether penetration occurred.

**9. Criminal Law § 173— remark by trial court—invited error**

In this prosecution for the rape of defendant's stepdaughter, the trial judge's remark that he was excluding evidence concerning defendant's relationship with a certain female "except as it relates to his relationship with his wife, which, of course, also is not on trial in this particular case," made in response to a question by defense counsel, if error, was invited error of which defendant cannot complain. Further, defendant failed to show that he was prejudiced by such remark.

**10. Rape and Allied Offenses § 4— warrants against defendant by victim's mother —exclusion not prejudicial**

In a prosecution of defendant for the rape of his stepdaughter, the trial court did not commit prejudicial error in the exclusion of defendant's testimony regarding prior warrants taken out against him by his stepdaughter's mother.

ON appeal from judgment entered by *Thornburg, J.,* at the 13 December 1982 Criminal Session of Superior Court, MACON County. Heard in the Supreme Court 12 December 1983.

Defendant was charged in an indictment proper in form with rape in the first degree of Christy Marie Deal, a female child under twelve years of age, the defendant being over the age of twelve and more than four years older than Christy Marie Deal.

Defendant is the stepfather of the child. At the time of the events in question, Easter of 1982, Christy Deal was living with her mother, Carolyn Stanley, her brother, and defendant in Otto, North Carolina.

At trial, defendant's motions to dismiss at the close of the state's evidence, at the close of all evidence, and after the verdict, were denied. The jury having returned its verdict of guilty of rape in the first degree, Judge Thornburg imposed the mandatory sentence of life imprisonment.

Upon defendant's affidavit of indigency, on 16 December 1982 Judge Thornburg appointed attorneys Steven E. Philo and David C. Spivey as counsel on appeal.

*Rufus L. Edmisten, Attorney General, by Daniel C. Oakley, Special Deputy Attorney General, for the State.*

*Steven E. Philo and David C. Spivey for defendant.*

MARTIN, Justice.

Attorneys for the defendant have raised seventeen issues on appeal, based on twenty-two assignments of error. We have examined the entire record on appeal. For reasons which follow, we find that this defendant received a fair trial, free of prejudicial error.

In this opinion, assignments of error will be grouped together where clarity dictates; further facts in the case will be related as relevant issues are considered.

Defendant's first two assignments of error concern the following decision and comments by Judge Thornburg immediately after the jury had been impaneled, just prior to the calling of the first witness:

THE COURT: All right. Do you plan to call the young girl?

MR. CABE: Yes, your Honor.

THE COURT: All right. All persons in the courtroom other than the mother of this child, and the defendant, and the immediate law enforcement officers involved in the trial of the case will have to leave the courtroom until this testimony is concluded. So everyone in the courtroom, whether you're a witness or whatever your position is, you'll have to leave. That includes all family members other than the child's mother.

MR. PHILO: Does that include the witnesses for the State, also?

THE COURT: That includes everybody. I think they're all leaving.

MR. PHILO: Your Honor, we'd like to put it in the record we object to that.

THE COURT: Let the record reflect that the defendant objects to the court permitting the DDS officer and the juvenile court officer who were instrumental in the preparation of the case and at the request of the State are necessary to the handling of the examination of this witness remain in the courtroom. The objection is overruled. Exception for the defendant.

[1] Defendant argues that the trial judge "singled out the State for a special privilege," in violation of N.C.G.S. 15A-1225, when he permitted two of the state's corroborating witnesses who later testified to remain in the courtroom during Christy Deal's testimony, while excluding one of defendant's chief witnesses who also later testified. Furthermore, defendant argues, it was error for the trial judge to comment in the presence of the jury that the two witnesses for the state were "law enforcement officers . . . instrumental in the preparation of the case." This comment improperly bolstered the later testimony of these witnesses and also gave more credence to the child's testimony, prejudicing the defendant, in violation of N.C.G.S. 15A-1222 and -1232.

We find each of these contentions to be meritless.

With respect to the sequestration of witnesses at this trial, the pertinent statute provides:

> Upon motion of a party the judge may order all *or some* of the witnesses other than the defendant to remain outside of the courtroom until called to testify, except when a minor child is called as a witness the parent or guardian may be present while the child is testifying even though his parent or guardian is to be called subsequently.

N.C. Gen. Stat. § 15A-1225 (1983) (emphasis added). It is well settled that this practice is discretionary with the judge and is not a matter of right. *State v. Mason*, 295 N.C. 584, 248 S.E. 2d 241 (1978), *cert. denied*, 440 U.S. 984 (1979); *State v. Cross*, 293 N.C. 296, 237 S.E. 2d 734 (1977); *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972); 1 Brandis on North Carolina Evidence § 20 (1982). A ruling on this matter is therefore not reviewable on appeal absent a showing of an abuse of discretion. *State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574 (1982); *State v. Royal*, 300 N.C. 515, 268 S.E. 2d 517 (1980); *State v. Mason, supra.*

Defendant has neither argued nor shown abuse of discretion by the trial court, nor do we find it from the record. The statute allows the trial judge to exclude "all or some" of the witnesses. We find no error in the trial court's decision to permit Wanda Cook, Macon County Department of Social Services worker, and juvenile officer Gene Ledford to remain in the courtroom during the testimony of Christy Deal.

That the trial judge made the ruling on his own motion, rather than upon motion of counsel, is of no moment. The trial judge has this discretionary power in the absence of the statute. *Lee v. Thornton*, 174 N.C. 288, 93 S.E. 788 (1917) (Chief Justice Clark giving a thorough review of the question).[1] The judge's power to control the progress and, within the limits of the adversary system, the shape of the trial has long included the broad power to sequester witnesses before, during, and after their testimony. *Geders v. United States*, 425 U.S. 80, 47 L.Ed. 2d 592 (1976); *Holder v. United States*, 150 U.S. 91, 37 L.Ed. 1010 (1893).

---

1. Effective 1 July 1984, N.C.G.S. 8C-1, Rule 615, will become effective, codifying, *inter alia*, the authority of the court to make the sequestration order of its own motion. 1983 N.C. Sess. Laws ch. 701, § 3.

[2]  With regard to the propriety of the trial judge's references to the witnesses excused from the sequestration, we note that the one objection made at trial to the court's order went clearly and solely to the decision to allow Cook and Ledford to remain in the courtroom. No objection was made to the court's subsequent explanatory comments. The alleged impropriety should have been brought to the judge's attention at trial. "He who would save his rights must be reasonably prompt and diligent in asserting them." *State v. Randall*, 170 N.C. 757, 762, 87 S.E. 227, 229 (1915). Defendant has waived his right to challenge these remarks on appeal. *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981); *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976); *State v. McAllister*, 287 N.C. 178, 214 S.E. 2d 75 (1975). Furthermore, defendant has failed to argue or demonstrate any prejudice. *State v. Jones*, 278 N.C. 259, 179 S.E. 2d 433 (1971); N.C. Gen. Stat. § 15A-1443(a) (1983).

[3]  Defendant's third and fourth assignments of error are concerned with the trial testimony of Christy Marie Deal. At the time of this trial, the child was six years old. A series of introductory questions and answers about details of her schooling, living arrangement, and persons to whom she had spoken about this case showed that this witness understood questions put to her and could answer these questions. Defendant argues that having established her ability to so testify, there was no further justification for the leading questions then addressed to this witness. Direct evidence of defendant's criminal activity was provided by this sole witness, argues defendant, by way of improper leading questions which were used to establish the essential elements of the crime for which he was charged.

Examples of the challenged testimony follow:

Q. What did Rembert say to you?

A. He told me to go get my clothes off.

. . . .

Q. Did you take your clothes off?

A. Yeah.

Q. And where did you go?

A. I went in Mama's room.

State v. Stanley

Q. How was Rembert dressed at that time, Christy?

A. Just a T-shirt and he didn't have on no more clothes on.

Q. When you went into the bedroom, where did you go in the bedroom, Christy?

A. I got in the bed.

. . . .

Q. How were you laying?

A. I was laying on my back.

Q. Now, Christy, what happened at that time?

A. He put his thing in my—he put his thing way up in my pee.

Q. Now, what is your pee, Christy?

A. In front.

Q. Christy, would you step down, please?

A. (Witness complies.)

Q. Right here. Now, when you refer to your pee, Christy, what—would you point out with your hand what you mean?

A. (Indicating.) My pee hole.

Q. When he did that, Christy, did it hurt?

A. Yeah.

Q. When you say his thing, Christy, what do you mean?

A. His thing what he pees through.

. . . .

Q. After that was over, Christy, what did Rembert tell you?

A. He told me to go in the bathroom to wipe the blood off, and so I got a wash rag to wipe the blood off. And so he brought my clothes to me and he told me to get a napkin so I wouldn't get any blood on my panties.

. . . .

Q. Now, Christy, where was your mother during this time?

A. At work.

. . . .

Q. Before you went outside, Christy, did Rembert tell you anything else?

A. He told me not to tell anybody or he'd do it again.

. . . .

Q. Christy, has Rembert ever done this thing to you before?

A. Yeah.

A leading question is generally defined as one which suggests the desired response and may frequently be answered yes or no. *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977); *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974); 1 Brandis, *supra*, § 31. We note that, by definition, the question must suggest the proper response; it is not leading simply because it may be answered yes or no. *State v. Britt, supra; State v. Watkins*, 283 N.C. 504, 196 S.E. 2d 750 (1973). Examining the direct testimony of Christy Deal in its entirety, we find that in virtually no instance did the questioner suggest the proper response.

We note, furthermore—and defendant concedes—that questions which are clearly leading are often necessary and permitted on direct examination when the witness "has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where . . . the inquiry is into a subject of delicate nature such as sexual matters." *State v. Greene, supra*, 285 N.C. at 492, 206 S.E. 2d at 236. Here the trial judge was concerned with a six-year-old child as a prosecuting witness and with unnatural sexual acts. In any event, rulings by the trial court on the use of leading questions are discretionary and reversible only for abuse of discretion. *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10, *cert. denied*, 429 U.S. 932 (1976); *State v. Payne*, 280 N.C. 150, 185 S.E. 2d 116 (1971) (and cases cited therein).

Defendant's assignments of error are overruled.

[4]  By his fifth assignment of error, defendant contends that the trial court erred in refusing to allow Christy Deal to testify on cross-examination regarding the relationship of her mother, Carolyn Stanley, to the defendant. The questions involved hearsay and were incompetent. For example: "Your Mama doesn't want him to come back, though, does she?" "Your Mama told you she didn't want him to come back?"

Defendant argues that "[t]he excluded testimony was necessary so that Defendant could argue to the jury a reason as to why the child would lie." We note that the record reveals ample support by evidence received elsewhere during the trial for defendant's argument regarding Mrs. Carolyn Stanley's behavior toward him. Even though defendant argues that the testimony was necessary to his defense, evidence must be competent before it is admissible. The testimony was hearsay and not admissible. This assignment is overruled.

[5]  At trial, the state offered testimony of three witnesses in corroboration of the chief prosecuting witness, Christy Deal. As each witness testified, the trial judge cautioned the jury as follows: "Members of the jury, this evidence is offered and admitted for the sole purpose of corroborating or strengthening the testimony of the witness Christy Deal, if you find that it does or tends to do so. It may not be considered by you for any other purpose."

Defendant argues that these instructions were improper in that they required the jury to conclude that Christy Deal's testimony had been strengthened even if the evidence of corroboration in the jury's mind was so slight it would reject it.

There is no merit to this contention.

The quoted instruction did not improperly express an opinion on the evidence to the jury. To the contrary, the instruction made it quite clear that it is for the jury to decide whether the evidence in fact corroborated the witness. 1 Brandis, *supra*, § 52; *State v. Alston*, 307 N.C. 321, 298 S.E. 2d 631 (1983); *State v. Lester*, 294 N.C. 220, 240 S.E. 2d 391 (1978). The instructions adequately defined the function of corroborative testimony. *State v. Rogers*, 299 N.C. 597, 264 S.E. 2d 89 (1980); *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429 (1960).

At no time did defendant object at trial to these instructions as improper or incomplete. He cannot be heard now to so complain. *State v. Lee*, 248 N.C. 327, 103 S.E. 2d 295 (1958) (court in its charge did not explain difference between substantive and corroborative evidence; no grounds for exception where no request for such instruction had been made).

We further note that defendant had, and took full advantage of, his opportunity to cross-examine each of the corroborating witnesses.

This assignment is overruled.

[6] Defendant's next three assignments of error concern the expert opinion testimony of Dr. Frederick Berger and Dr. Joseph Williams.

Dr. Berger, having been accepted by the court with no objections as an expert in the field of pediatrics, testified in part as follows:

On September 20, 1982, I saw Christy Marie Deal at my office. Her mother was with her and, I believe, her aunt. I did a physical examination on Christy. I did a complete physical examination basically starting from the head and working down to the toes and examining essentially all of the examinable parts of the body. I examined the pubic area of Christy. I observed her vaginal opening was larger than a child her age, and I also observed some condyloma or venereal warts located around her anus. Venereal warts are wart-like growths which are flesh colored to pinkish to purplish which may occur singly, they may occur in clusters, and they are located around the genital areas, around the penis, around the vagina, around the rectum, and are believed by the most recent work that has been done in the 70's and 80's to be sexually transmitted.

When asked whether he had an opinion as to whether or not Christy's vagina had been penetrated, Dr. Berger answered, over defendant's objection: "I believe that the large opening which is extremely unusual in one her age is compatible with penetration of the vagina."

On cross-examination, Dr. Berger acknowledged that at the time of his examination of Christy, he found no trauma around either the rectum or the vagina. He noted:

> I chose not to instrument her twice because I wanted her evaluated by an obstetrician. . . . If an adult penetrates a female's vagina and the penis goes all the way up into the vagina I would expect to see either lacerations or scars if the penetration had been all the way up to the cervix. When that occurs for the first time I would expect there to be a ripping and tearing within the vagina.

Dr. Joseph Williams, accepted by the court with no objections by defendant as an expert in the field of obstetrics and gynecology, did conduct a pelvic examination of the child. Dr. Williams testified, with no objections, that as a result of his examination, he found evidence of vaginal penetration as well as venereal or perineal warts. His internal examination of Christy did not reveal significant intravaginal scarring. Over defendant's objection, Dr. Williams went on to testify that the size of Christy Deal's vagina when compared to that of another six year old, was "grossly enlarged." Dr. Williams was then asked the following:

> Q. Doctor, do you know how venereal warts or perineal warts, as you've described them, are transmitted?
>
> MR. PHILO: Objection.
>
> THE COURT: Overruled.
>
> THE WITNESS: It's generally accepted that they're usually transmitted sexually.

Defendant argues that Dr. Berger's opinion testimony regarding vaginal penetration of the child and Dr. Williams's testimony regarding her vaginal size and the transmission of venereal warts were erroneously admitted by the trial court.

In each instance, claims defendant, the opinion lacked a proper foundation: There had been no internal examination to substantiate Dr. Berger's vaginal penetration opinion; Dr. Williams had never testified that he had examined or studied other six-year-old females as a basis for his opinion as to Christy's comparative vaginal size; finally, his testimony regarding the transmission of

venereal warts was not based on his personal knowledge of the child but on what "usually occurs."

We reject defendant's argument. It is well settled that a physician who is properly qualified as an expert may offer an opinion as to whether the victim in a rape prosecution has been penetrated and whether internal injuries have been caused thereby. *State v. Starnes*, 308 N.C. 720, 304 S.E. 2d 226 (1983); *State v. Galloway*, 304 N.C. 485, 284 S.E. 2d 509 (1981); *State v. Atkinson*, 278 N.C. 168, 179 S.E. 2d 410, *death sentence vacated*, 403 U.S. 948 (1971). Dr. Berger's opinion with regard to vaginal penetration was entirely proper. Dr. Berger had twice examined the child; his opinion testimony limited as it was to "the compatibility" of the size of her vagina with possible penetration did not exceed the bounds of his examination, attempting neither to opine about the exact nature nor the cause of the penetration.

We also find that Dr. Williams's testimony regarding the size of Christy's vagina and the generally accepted means whereby venereal warts such as those he observed on the child are transmitted was well within the bounds of permissible medical expert testimony. The proper analysis has been summarized by this Court as follows, and governs this issue:

> We conclude, therefore, that in determining whether expert medical opinion is to be admitted into evidence the inquiry should be not whether it invades the province of the jury, but whether the opinion expressed is really one based on the special expertise of the expert, that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact. The test is as stated in *State v. Powell, supra*, 238 N.C. at 530, 78 S.E. 2d at 250, whether the "opinion required expert skill or knowledge in the medical or pathologic field about which a person of ordinary experience would not be capable of satisfactory conclusions, unaided by expert information from one learned in the medical profession."

*State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E. 2d 905, 911 (1978).

Dr. Williams's "personal knowledge," or lack thereof, of the specific cause of this child's venereal warts was not the subject

of the question put to him at trial, nor, in any event, is it deter-
minative of the admissibility of his testimony. *See State v. Wade,*
296 N.C. 454, 251 S.E. 2d 407 (1979); *State v. DeGregory,* 285 N.C.
122, 203 S.E. 2d 794 (1974). *See generally* 1 Brandis, *supra,* § 136.

These assignments of error are overruled.

[7] Defendant next assigns as error the trial court's admission,
over his objection, of the testimony of Ms. Edith Parkerson,
Christy Deal's first grade schoolteacher at the time of this trial.
In the course of a very brief series of questions and answers, this
witness testified that at the beginning of the school year, around
12 August 1982, Christy "seemed like a shy little girl"; that "she
didn't do well in the beginning," as far as her grades were con-
cerned; that the child noticeably began to improve by about the
middle of October and is a "good, average student."

Defendant argues that this testimony is not relevant to the
issues before the court and that its admission was prejudicial: "To
a jury panel naturally expecting to see evidence of psychological
damage in a sexually abused child, and with nothing else appear-
ing, such evidence would have a great impact . . . ."

In examining Ms. Parkerson's testimony, we disagree with
both of defendant's conclusions.

When defendant was arrested in September, Christy was
physically examined and intensively questioned, and this case was
brought to trial. This witness's testimony was relevant with
respect to the condition of Christy during this period of time.

> [I]t is not required that the evidence bear directly on the
> question in issue, and it is competent and relevant if it is one
> of the circumstances surrounding the parties, and necessary
> to be known to properly understand their conduct or motives,
> or to weigh the reasonableness of their contentions.

*Bank v. Stack,* 179 N.C. 514, 516, 103 S.E. 6 (1920).

Counsel's questions to this witness were proper. Parkerson's
responses in no sense were capable of creating undue sympathy
or prejudice to defendant. On the contrary, the teacher's observa-
tions could be interpreted as benefiting defendant. The child was
portrayed basically as a quite normal first-grader.

This assignment of error has no merit.

[8] Defendant's next three assignments of error go to the question of the sufficiency of the evidence and the propriety of the trial court's refusal to dismiss the case at the close of the state's evidence, at the close of all the evidence, and after the return of the verdict. He argues that "[t]aking the State's evidence, even in the best of all possible lights, there was insufficient, substantial evidence in the present case to establish penetration of the vagina and to require submission of the case to the jury."

We do not so read the record in this case.

Christy Marie Deal testified directly, unequivocally, and knowingly that defendant had sexual intercourse with her. Her testimony was corroborated by her statements as recalled by trial witnesses Kathy Burkhart, Wanda Cook, and Carolyn Stanley. Medical expert testimony confirmed the compatibility of the child's testimony with her physical condition.

Any contradictions or ambiguities in this record regarding the essential element of penetration have to do with the question of degree only, not with whether penetration occurred. The slightest penetration of the sexual organ of the female by the sexual organ of the male is all that is required to prove vaginal intercourse. *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968); *State v. Jones*, 249 N.C. 134, 105 S.E. 2d 513 (1958).

The evidence is thus clear and unequivocal as to each essential element of the crime of rape in the first degree as set forth in N.C.G.S. 14-27.2 and as to defendant's being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982); *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971).

The motions to dismiss were properly denied.

Defendant next assigns as error rulings and comments of the trial court made in the course of defendant's own testimony. Brief relevant portions of the testimony follow:

Q. Now, did you go anywhere else with Linda Jones?

MR. CABE: Objection.

THE COURT: Sustained.

Q. On the 13th, did you go anywhere else with Linda Jones?

MR. CABE: Objection.

THE COURT: Sustained.

Q. When did you next see Linda Jones?

MR. CABE: Objection.

THE COURT: Sustained.

MR. PHILO: Your Honor, we'd like to get these answers into the record.

THE COURT: Put them in after you've finished with this witness. Just make a list of what you want to ask about Linda Jones.

MR. PHILO: Sir, are you excluding all evidence relative to her or—

THE COURT: I'm excluding all evidence relevant to his association with Linda Jones except as it relates to his relationship with his wife, which, of course, also is not on trial in this particular case.

[9] Defendant objects, first, to the explanatory comment of the trial judge referring to "his relationship with his wife which, of course, also is not on trial in this particular case." This, he argues, was "a severe expression of the trial court's opinion not only as to this particular piece of testimonial evidence, but also an opinion as to the Defendant's main line of defense." Secondly, defendant says this same line of defense—that Carolyn Stanley induced Christy Deal to implicate him because of her "maniacal tendencies of jealousy" toward defendant—was improperly restricted by trial court rulings excluding his testimony regarding Carolyn's past efforts to use criminal process to control him. The excluded testimony was, he claims, relevant, competent, and admissible evidence.

These arguments must fail.

The decision of the trial judge to exclude irrelevant testimony relating to defendant's association with Linda Jones was entirely proper.

The remark by the trial judge was made in response to a question by defendant's counsel. If error, it was invited error of which defendant cannot complain. *Brittain v. Blankenship*, 244 N.C. 518, 94 S.E. 2d 489 (1956). Furthermore, it does not necessarily follow that every ill-advised comment by a trial judge which may tend to impeach a witness is so harmful as to constitute reversible error. *State v. Brady*, 299 N.C. 547, 264 S.E. 2d 66 (1980). Any such comment must be considered in light of all the facts and attending circumstances disclosed by the record. Whether defendant was deprived of a fair trial by the challenged remark must ultimately be determined by what was said and its probable effect upon the jury. The burden of showing prejudice is, of course, on the appellant. *State v. Faircloth*, 297 N.C. 388, 255 S.E. 2d 366 (1979); *State v. Arnold*, 284 N.C. 41, 199 S.E. 2d 423 (1973); N.C. Gen. Stat. § 15A-1443(a) (1983). The assignment of error is overruled.

[10] For these same reasons, we find no prejudicial error in the trial court's exclusion of defendant's testimony regarding prior warrants taken out against defendant by Carolyn Stanley.

The trial judge's determination that this line of questioning exceeded the bounds of relevance or that the questions themselves were improperly leading, clearly does not present reversible error.

Defendant's remaining two assignments of error concern the trial court's denial of his motions for appropriate relief based upon the verdict being contrary to the weight of the evidence and the insufficiency of the evidence. For reasons dealt with elsewhere in this opinion, these assignments are overruled.

No error.