STATE v. WILLIAMSON

[110 N.C. App. 626 (1993)]

---

STATE OF NORTH CAROLINA v. STEVEN RAY WILLIAMSON

No. 923SC275

(Filed 15 June 1993)

1. Narcotics, Controlled Substances, and Paraphernalia § 105
(NCI4th) — conspiracy to sell certain quantity of marijuana —
sufficiency of evidence

Evidence was sufficient to prove the existence of one
master agreement to deal in more than 100 but less than
2,000 pounds of marijuana where the evidence tended to show
that, even though other people were sometimes involved in
this particular conspiracy, the two main participants, defend-
ant and Dixon, were consistent throughout; despite the fact
that the course of dealing between Dixon and defendant ex-
tended over a three and a half year period, the time intervals
between transactions were short and fairly consistent in that
Dixon made purchases from defendant as often as three times
per week; the primary objective of the relationship between
defendant and Dixon, to sell as much marijuana as they could,
never changed; and there was only one meeting at which the
scheme itself was discussed, while all other meetings were
in furtherance of the scheme Dixon and defendant adopted
at the first meeting.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 47; Evidence §§ 1124 et seq.**

2. **Narcotics, Controlled Substances, and Paraphernalia § 105 (NCI4th) — conspiracy to sell quantity of marijuana — open-ended agreement to sell — sufficiency of evidence**

Evidence of the cumulative quantity of controlled substance that a defendant sells in the course of a single open-ended conspiracy is sufficient to support his conviction for conspiracy to sell that quantity even though the agreement of the conspirators is silent as to exact quantity.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 47; Evidence §§ 1124 et seq.**

3. **Criminal Law § 360 (NCI4th) — violation of sequestration order — testimony excluded — no error**

The trial court did not abuse its discretion by limiting the testimony of a defense witness who had violated a sequestration order, since there was a distinct possibility of collusive testimony, and, in light of consistent testimony from the State's witnesses, it is unlikely that the witness's testimony would have effectively controverted any of the State's case.

**Am Jur 2d, Trial § 339.**

Appeal by defendant from judgment entered 24 July 1991, in Pitt County Superior Court by Judge Cy A. Grant. Heard in the Court of Appeals 29 March 1993.

Defendant was indicted and tried for multiple violations of the Controlled Substances Act (N.C. Gen. Stat. §§ 90-86 to -113.8 (1990)), including conspiracy to sell or deliver at least 100, but less than 2000, pounds of marijuana. The jury returned verdicts of guilty on five charges, and the court, after arresting judgment on one count, sentenced defendant to 29 years imprisonment. From this judgment, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Mary Jill Ledford, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Janine M. Crawley, for defendant.*

MCCRODDEN, Judge.

Defendant presents two questions, the first of which is whether there was sufficient evidence to prove a conspiracy to sell more than 100, but less than 2000, pounds of marijuana. The first of his two contentions on this question is that there was insufficient evidence to prove the existence of one master agreement to deal in that amount of marijuana.

At trial, the State's evidence tended to show that, while he was the assistant director of the Greene County Parks and Recreation Department in 1982, defendant became acquainted with Elmer Lee Dixon, Jr., a part-time worker at the Department from 1982 through the summer of 1986. In December 1986, while Dixon was at defendant's house, defendant asked Dixon if he would sell marijuana to make money. When Dixon responded affirmatively, defendant showed him some marijuana in a clear plastic bag. Dixon could tell from smelling it and looking at it that it was good marijuana, and he indicated to defendant that he could sell it without problem. Defendant told Dixon that he wanted him to set up deals, by which he meant that he wanted Dixon to find people who would buy the marijuana. Over the course of the period from December 1986, until approximately May 1989, Dixon arranged deals for defendant. When he first started selling marijuana for defendant, Dixon sold amounts of two to three pounds, and occasionally up to five pounds, three times per week. On several occasions, Dixon also sold amounts of eight pounds to buyers in Wilson. There were four times when Dixon sold as much as twenty-five pounds of marijuana obtained from defendant. From the time he began selling marijuana for defendant through February 1988, Dixon had obtained at least 150 pounds from defendant. From February 1988, through the summer of 1988, Dixon obtained marijuana from defendant at least three times a week, in amounts of two to five pounds, totalling at least 75 pounds. From the fall of 1988 until the time at which Dixon quit working with defendant in May or June of 1989, Dixon obtained at least 250 pounds of marijuana from defendant.

The manner in which the deals were arranged was consistent throughout the time defendant dealt with Dixon. Dixon would contact the defendant, either at home or at work, and would request a number of pounds. Defendant would then contact his supplier and tell Dixon where he could pick up the marijuana. Sometimes Dixon would meet at defendant's house to pick up the marijuana,

STATE v. WILLIAMSON

[110 N.C. App. 626 (1993)]

and sometimes defendant would tell Dixon where the marijuana would be hidden. When Dixon met defendant at his house to pick up an order of marijuana, defendant would get the marijuana from a space above the door to his garage.

When he was told to pick up the marijuana from somewhere other than defendant's house, Dixon was able to locate the marijuana easily because it was always wrapped in a trash bag. One pound units of marijuana were in clear plastic freezer storage bags found within a trash bag. Dixon would deliver the marijuana to the buyer, return to defendant with the money, and receive from defendant his share of the proceeds.

The State also presented several other witnesses who had had marijuana dealings with defendant. Each gave testimony that corroborated Dixon's testimony. Each gave a description, consistent with Dixon's testimony, of how the deals were arranged, where the marijuana was found, and how it was packaged.

In his attack on the sufficiency of the evidence to support a conviction for one overarching conspiracy, defendant relies on the case of *State v. Rozier*, 69 N.C. App. 38, 316 S.E.2d 893, *disc. review denied*, 312 N.C. 88, 321 S.E.2d 907 (1984). However, a more instructive and factually analogous case is *State v. Wilson*, 106 N.C. App. 342, 416 S.E.2d 603 (1992), which relies heavily on *Rozier*. In *Wilson*, the defendant was convicted on four conspiracy charges that arose out of a series of robberies that occurred during a two week period. One of the admitted participants in the robberies testified that the participants, including the defendant, had planned the course of robberies to get cash. The duration of the conspiracy was to be indefinite. Indeed, the conspirators planned for it to last "to the death." *Wilson*, at 346, 416 S.E.2d at 605. A unanimous panel of this Court stated:

Because the crime of conspiracy lies in the agreement itself, and not the commission of the substantive crime, a defendant can, under certain fact situations, be convicted of a single conspiracy when there are multiple acts or transactions. To determine whether single or multiple conspiracies are involved, the "essential question is the nature of the agreement or agreements . . . but factors such as time intervals, participants, objectives, and number of meetings all must be considered."

*Wilson*, at 345, 416 S.E.2d at 605 (quoting *Rozier*) (citations omitted). The Court applied what it called "the *Rozier* factors" to the evidence, found that there was a single conspiracy, and vacated three of the conspiracy convictions.

[1] In this case, defendant asserts that the State failed to show sufficient evidence as to each of the four *Rozier* factors and, therefore, failed to show a master agreement.

It is well settled that the test of the sufficiency of the evidence in a criminal case is whether there is substantial evidence to support a finding of each element of the offense charged and that the offense was committed by the defendant. *State v. Roseman*, 279 N.C. 573, 580, 184 S.E.2d 289, 294 (1971). The evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Fletcher*, 301 N.C. 709, 712, 272 S.E.2d 859, 860-61 (1981).

In applying a *Rozier* analysis to the evidence in this case, we find ample evidence from which a jury could conclude that there was a single conspiracy between defendant and Dixon. First, even though other people were sometimes involved in this particular conspiracy, the two main participants, defendant and Dixon, were consistent throughout. "The entering and exiting of various participants in an otherwise ongoing plan to commit a particular felonious act does not convert a single conspiracy into several." *Wilson*, at 346, 416 S.E.2d at 605.

Second, despite the fact that the course of dealing between Dixon and defendant extended over a three and a half year period, the time intervals between transactions were short and fairly consistent. Dixon testified that he made purchases from defendant as often as three times per week.

Third, the primary objective of the relationship between defendant and Dixon, to sell as much marijuana as they could, never changed. Finally, as to the number of meetings, there was sufficient evidence supporting the State's contention that there was only one meeting at which the scheme itself was discussed. All the other meetings were in furtherance of the scheme Dixon and defendant adopted at the first meeting. Hence, we find that there

was sufficient evidence to demonstrate the existence of a single agreement to traffic in marijuana.

[2] Defendant's second contention regarding sufficiency of the evidence raises the issue of whether one can be convicted of conspiring to sell or deliver at least 100, but less than 2000, pounds of a controlled substance where the evidence shows an open-ended agreement with no reference to quantity. Defendant argues that the fact that the Controlled Substances Act contains a provision dealing with conspiracies other than trafficking conspiracies, N.C.G.S. § 90-98, combined with the fact that the trafficking conspiracy section, N.C.G.S. § 90-95(i), refers to the substantive trafficking provision, N.C.G.S. § 90-95(h), shows that the trafficking conspiracies section is meant to apply only to conspiracies to deal in specific amounts of drugs. He also cites *Rozier* for the proposition that "it is the amount of contraband agreed upon, not the amount actually delivered, which is determinative in a narcotics conspiracy case." *Rozier*, 69 N.C. App. at 49, 316 S.E.2d at 900.

We believe that defendant's argument based on the statute is fatally flawed. To find that a person who agreed to sell a specific quantity of controlled substance is more culpable than one who agrees to sell an indefinite, and potentially unlimited, amount would be anomalous. Given *Rozier's* proscription of multiple conspiracies based on a series of events, the only reasonable interpretation of the statute is that given to it by the trial court.

Insofar as *Rozier* holds that the amount of contraband referenced in the agreement controls the nature of the offense, that case is distinguishable. The defendant Rozier agreed to the exchange of a specific quantity, one ounce (28.349 grams), of cocaine. *Id.* at 48, 316 S.E.2d at 900. In the present case, the agreement defendant and Dixon entered, to sell as much marijuana as possible, was open-ended. Since the evidence shows that it was possible for them to sell an amount greater than 100, but less than 2000, pounds, it defines the agreement and is sufficient to prove the offense charged. Accordingly, we hold that evidence of the cumulative quantity of controlled substance that a defendant sells in the course of a single open-ended conspiracy is sufficient to support his conviction for conspiracy to sell that quantity even though the agreement of the conspirators is silent as to exact quantity.

[3] Defendant's second question on appeal is whether the trial court abused its discretion by limiting the testimony of a defense

STATE v. WILLIAMSON

[110 N.C. App. 626 (1993)]

witness who had violated a sequestration order. The record reflects that defendant was not allowed to introduce, through the testimony of one Smith, evidence about the contents of defendant's garage from which Dixon retrieved bags of marijuana.

An order to sequester witnesses is issued in the sound discretion of the trial judge. The purpose of the order is to prevent colluded testimony, and, if the order has been violated, the court may exclude that witness's testimony. *Lee v. Thornton*, 174 N.C. 288, 93 S.E. 788 (1917). In the present case, Smith was present during approximately two hours of defendant's testimony, including an exchange in which defendant averred that drugs had never been in his garage and that Smith used the garage often. Since these were precisely the matters about which Smith was to testify, there was a distinct possibility of collusive testimony. In addition, the State's witnesses, who were sequestered from one another, were consistent in their testimony that defendant kept marijuana above the door in his garage. It is, therefore, unlikely that Smith's testimony would have effectively controverted any of the State's case. We find that the trial court did not abuse its discretion in excluding this testimony of the witness.

We find defendant received a fair trial free of prejudicial error.

No error.

Judges JOHNSON and ORR concur.