STATE OF NORTH CAROLINA v. RONNIE RAY DAVIS

No. 401A86

(Filed 5 November 1987)

1. Criminal Law § 63— insanity—lay opinion

The trial court did not err in a prosecution for first degree murder by allowing two witnesses called by the State to give their opinions as to defendant's sanity at the time of the killing where both witnesses had reasonable opportunities to form opinions regarding defendant's sanity based upon their respective experiences with defendant at a time sufficiently proximate to the crime. The law as stated in N.C.G.S. § 8C-1, Rule 701, does not appear to be significantly different from the common law admissibility requirement of first-hand knowledge.

**2. Criminal Law § 63— insanity—burden of proof**

The Supreme Court declined the defendant's invitation to change the presumption of sanity or the rule that requires a defendant to carry the burden of proving his insanity to the satisfaction of the jury.

**3. Criminal Law § 63— insanity—M'Naghten test**

The Supreme Court declined to replace the *M'Naghten* test for insanity with the American Law Institute standard.

**4. Homicide § 24— murder—instructions—no error**

There was no plain error in a prosecution for first degree murder where the trial court's instructions, taken as a whole, clearly charged the jury that the State bore the burden of proof of each of the elements in question and that the jury could consider circumstantial evidence from which the elements could be inferred. The instructions could not reasonably be read to raise a mandatory presumption that the elements were proved simply by proof of any of the circumstances noted in the instructions.

APPEAL by defendant from judgment entered 7 February 1986 imposing sentence of life imprisonment. Defendant was tried before *Brewer, Jr., J.,* and a jury, at the 27 January 1986 and 3 February 1986 Criminal Sessions of Superior Court, CUMBERLAND County, and convicted of first degree murder. Heard in the Supreme Court 13 October 1987.

*Lacy H. Thornburg, Attorney General, by Thomas J. Ziko, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

On this appeal defendant brings forward several assignments of error. Defendant first contends that the trial court committed reversible error in permitting lay witnesses to state their opinions regarding defendant's sanity at the time of the alleged murder. Defendant next contends that the State should have the burden of proving that defendant was sane at the time of the alleged crime and that the *M'Naghten* test used to determine a defendant's sanity is no longer valid. In defendant's final assignment of error, he contends the trial court committed plain error when instructing the jury on intent to kill and premeditation and deliberation.

We hold that defendant received a fair trial free of prejudicial error.

Defendant was indicted for the murder of Phillip Padilla (the victim). At a pretrial hearing it was determined that no aggravating circumstances existed and the case was tried as a non-capital case. Defendant entered a plea of not guilty by reason of insanity, specifically pleading he killed the victim while under the influence of a paranoid delusion that the victim was a demon or a devil.

The State presented witnesses who testified that on 1 March 1984 defendant drove up to the victim's house as he was returning home from high school. Witnesses testified that upon seeing defendant the victim started running, whereupon defendant took a rifle from his car and began shooting the victim. According to the witnesses, when the victim fell defendant ran up to him and fired several more rounds into the victim's head, after which defendant put the rifle in his car and drove off.

The witnesses also testified that defendant had previously been involved in fights with the victim, that Berry Jackson, a business acquaintance of the defendant, had conversed and transacted business with defendant two hours before the alleged crime and had not noted anything wrong with him at that time; that after the alleged murder defendant fled the scene of the crime, drove to his father's house, told his father that he wanted to sell the alleged murder weapon and left the rifle in his father's utility room. The State's witnesses further testified that the day after the crime defendant told law enforcement officers that he had not shot anyone, that he had been working during the time of the alleged murder, and that he had sold his rifle some time ago.

During the trial defendant did not testify but did present evidence relating to his insanity defense. Defendant's wife testified that for several years prior to the shooting of the victim, defendant and the victim had a history of disputes relating to the victim's relationship with one of defendant's daughters; that defendant and the victim had had several physical altercations, had taken each other to court on several occasions and that each had been convicted of assault on the other. Defendant's wife testified further that she and defendant believed that the victim was responsible for getting their daughter involved in drugs and in skip-

ping school. She testified also that during the time the victim was dating defendant's daughter, both defendant and the daughter stated they were having visions of demons and defendant stated that angels were talking to him.

Defendant also presented expert testimony that he was suffering from paranoid delusions at the time of the crime and was incapable of distinguishing between right and wrong when he killed the victim. On cross-examination these experts testified that during their interviews with defendant his concentration, orientation, memory and intellectual functions did not demonstrate any major impairments, that they did not have complete knowledge of defendant's actions immediately before and after the crime, and that defendant knew he had killed the victim and was remorseful.

On rebuttal, the State presented expert witnesses who testified that defendant's experts' knowledge of other doctors' evaluations of defendant would tend to create a bias in favor of a concurring opinion; that the circumstances surrounding the crime are important to rendering an opinion on insanity and that they would be concerned about psychiatric evaluations that were conducted without the benefit of that information. The State also presented testimony of two lay witnesses who testified that in their opinion defendant knew the difference between right and wrong at the time of the murder.

The jury returned a verdict of guilty of first degree murder and the trial judge entered the mandatory sentence of life imprisonment. Defendant appealed to this Court as a matter of right. N.C.G.S. § 7A-27(a) (1986).

[1] In his first assignment of error defendant contends the trial court erred in allowing two lay witnesses called by the State to give their opinions as to defendant's sanity at the time of the killing. Defendant argues that the lay witnesses had no personal knowledge of defendant's alleged paranoid delusion as to the victim. Thus, argues defendant, their testimony violates the personal knowledge requirement of N.C.R. Evid. 701.

Prior to 1984 the common law regarding the admissibility of lay opinions relative to a defendant's sanity was well established:

Anyone who has observed another, or conversed with him, or had dealings with him, and a reasonable opportunity, based thereon, of forming an opinion, satisfactory to himself, as to the mental condition of such person, is permitted to give his opinion in evidence on the issue of mental capacity, although the witness be not a psychiatrist or expert in mental disorders.

*State v. Hammonds*, 290 N.C. 1, 5-6, 224 S.E. 2d 595, 598 (1976) (quoting 1 Stansbury, N.C. Evidence § 127 (Brandis Rev. 1973)).

Rule 701 of the North Carolina Rules of Evidence, effective 1 July 1984, provides as follows:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.G.S. § 8C, Rule 701 (1983).

There is no reason to believe that the adoption of Rule 701 effected a substantive change in the law regarding the admissibility of lay opinions of sanity. First, the law as stated in Rule 701 does not appear to be significantly different from the common law admissibility requirement of firsthand knowledge. *See State v. Hammonds*, 290 N.C. 1, 5-6, 224 S.E. 2d 595, 598. Second, the Commentary to Rule 701 indicates that if Rule 701 made any change in the law, it was intended to permit more, not less, lay opinion testimony. Under the common law, lay opinion was allowed only where a shorthand expression of facts was necessary, McCormick on Evidence § 11 (3rd ed. 1984), whereas Rule 701(b) adopts the standard that lay opinion need only be helpful in clarifying a witness' testimony or helpful to determine a fact in issue. Third, federal courts, which have been operating under an identical rule since 1975, have held that lay opinions regarding a defendant's sanity continue to be admissible. *United States v. Brown*, 792 F. 2d 466 (4th Cir. 1986). Therefore, under Rule 701 the lay opinions regarding defendant's insanity are admissible if they are based on firsthand knowledge and if they are helpful to the jury.

In the case *sub judice*, defendant argues that the two lay witnesses could not have had firsthand knowledge regarding defendant's sanity because neither of the witnesses was told by defendant about his alleged paranoid delusions regarding the victim. This criticism by defendant of the lay opinions presumes that defendant was in fact suffering from paranoid delusions, an invalid presumption since the issue of defendant's sanity was for the jury to determine; therefore, we confine our analysis of the admissibility of the lay opinions of defendant's sanity to the requirements of Rule 701 as set out above.

Both witness Von Cannon and witness Jackson testified that in their opinion defendant knew the difference between right and wrong at the time defendant killed the victim. To be admissible lay opinion testimony, each of these witnesses had to have personal knowledge of defendant and the opinions had to be helpful to the jury. However, the fact that neither witness had the opportunity to observe defendant immediately before the crime does not require exclusion of their testimony. *See State v. Mayhand*, 298 N.C. 418, 259 S.E. 2d 231 (1979).

Witness Von Cannon testified that she had lived next door to defendant and his family for approximately two years and had seen and spoken to defendant almost every day during this period. She never observed defendant engage in any abnormal or strange behavior, and defendant had never spoken to her about having visions of demons, devils, or angels. Witness Jackson testified that he had known defendant for approximately a year, had worked with him for about a month and a half prior to the crime, and had seen and talked to defendant approximately two hours before defendant killed the victim. Witness Jackson also testified that he observed nothing abnormal about defendant's behavior on the day of the crime nor had defendant ever told Jackson about having visions of demons, devils, or angels.

We find that both witnesses had reasonable opportunities to form opinions regarding the defendant's sanity based upon their respective personal experiences with defendant at a time sufficiently proximate to the crime. We find also that these lay opinions meet the second prong of Rule 701, that is, they were helpful to the jury in determining whether defendant was sane at the time he killed the victim. The relevant weight to be given lay

opinions is within the province of the jury. *See State v. Evangelista*, 319 N.C. 152, 353 S.E. 2d 375 (1987). We hold there was no error in the admission of this testimony.

[2] In his next assignment of error defendant contends that his motion to dismiss the charge of murder should have been granted because the evidence shows he was insane at the time of the crime and the State failed to prove he was sane. Defendant concedes that under the law in this State he was not entitled to a directed verdict because there is a presumption that every defendant is sane and a defendant has the burden of proving his insanity to the satisfaction of the jury. However, defendant asks this Court to reverse the presumption and require the State to bear the burden of disproving insanity beyond a reasonable doubt.

It is well settled in this jurisdiction that "[e]very person is presumed sane until the contrary is shown, and the defendant has the burden of proving his insanity . . . to the satisfaction of the jury." *State v. Evangelista*, 319 N.C. 152, 161, 353 S.E. 2d 375, 382. This Court has repeatedly declined to change the presumption of sanity or the rule that requires a defendant to carry the burden of proving his insanity to the satisfaction of the jury. *Id.* We decline defendant's invitation and hold that the trial court did not err by refusing to grant defendant's motion to dismiss for failure of the State to disprove defendant's insanity beyond a reasonable doubt.

[3] In his third assignment of error, defendant again requests this Court to reverse prior decisions. Defendant asks that we adopt a more lenient standard of insanity which recognizes that volitional or emotional impairments might provide a legal defense for criminal conduct. Specifically, defendant asks this Court to replace the *M'Naghten* test for insanity with the American Law Institute (ALI) test for insanity. Defendant argues that if the ALI standard was applied in the case *sub judice*, he would be found insane even if he knew he was killing the victim while "killing the demon" and knew that killing the victim was wrong.

This Court has consistently held that the *M'Naghten* test, which focuses on the defendant's capacity to distinguish between right and wrong at the time of and in respect to the crime in question, is the appropriate test for insanity. *State v. Evan-*

*gelista,* 319 N.C. 152, 353 S.E. 2d 375. We decline to adopt a new test and we hold that the trial court did not err in instructing the jury that defendant bore the burden of proving his insanity in accordance with the *M'Naghten* test.

[4]  In his final assignment of error defendant contends the trial court's instructions on intent to kill and premeditation and deliberation violated defendant's right to due process and constituted plain error. More specifically, defendant argues the trial court's instructions could be read to mean that the jury was obligated to find that the State had proven an intent to kill and premeditation and deliberation beyond a reasonable doubt if it found that the State had proven the circumstances from which those elements might be inferred. Thus, defendant argues, the trial court's jury instructions relieved the State of its burden of proving every element of the crime.

In reviewing jury instructions for error, this Court has held that they must be considered in their entirety. *State v. Poole,* 305 N.C. 308, 289 S.E. 2d 335 (1982). When a defendant fails to voice an objection to jury instructions this Court must review the alleged error under the "plain error" standard, as set out in *State v. Odom,* 307 N.C. 655, 660-61, 300 S.E. 2d 375, 378-79 (1983). In order to establish that the trial court committed "plain error" in its jury instructions, thus entitling a defendant to a new trial, a defendant must show that absent the alleged erroneous instructions the jury probably would have returned a different verdict. *See State v. Walker,* 316 N.C. 33, 340 S.E. 2d 80 (1986).

Because defendant failed to object at trial to the trial court's jury instructions we must review those instructions under the "plain error" standard. In reviewing the trial court's jury instructions in their entirety, we find that the instructions clearly charged the jury that the State bore the burden of proof of each of the elements in question. The trial court correctly instructed the jury that when determining whether the State had carried its burden the jury could consider circumstantial evidence from which the elements may be inferred. We fail to see how these instructions could reasonably be read to raise a mandatory presumption that these elements were proved simply by proof of any of the circumstances noted in the instructions. Thus, we perceive no error in the instructions. We hold that the trial court's instructions do not constitute plain error.

Defendant received a fair trial free from prejudicial error.

No error.