STATE OF NORTH CAROLINA v. JAMES EDWARD BELL, JR.

No. COA02-1260

(Filed 15 July 2003)

## 1. Evidence— rape victim's statement—corroborative

A detective's testimony about a statutory rape victim's statement was properly admitted as corroborative evidence. The trial court is in the best position to determine whether the testimony of the detective corroborated that of the witness.

## 2. Criminal Law— reinstruction—verdict reached but not returned

The court's re-instruction of the jury on the age element of statutory rape was not erroneous where the court realized the error in the original instruction, correctly instructed the jury, and returned the jurors to the jury room after they had announced that they had a verdict but before the verdict was delivered. Defendant was not subjected to double jeopardy because there had been no final judgment before the re-instruction, and the court did not attempt to coerce a verdict.

## 3. Rape— sufficiency of evidence—identification of defendant

There was sufficient evidence that defendant was the perpetrator of a rape where the victim testified that defendant raped her, and had said this to her aunt, her mother, the police, the paramedics, and the doctors at the emergency room. The existence of contrary evidence is not controlling.

## 4. Rape— penetration—sufficiency of evidence

There was sufficient evidence of penetration in a rape case. Complete penetration need not occur.

Appeal by defendant from judgments entered 16 May 2002 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 11 June 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.*

*Terry W. Alford for defendant.*

TYSON, Judge.

James Edward Bell, Jr. ("defendant") appeals from the jury's conviction and his sentence for first-degree statutory rape and second-degree forcible rape. We find no error.

## I.  Background

On 1 September 2001, Pamela Bell lived with her three children, a four-year old, a two-year old, and an infant, across the street from B.H.'s family. B.H. was twelve years and eleven months old and was babysitting Bell's two youngest children. B.H. took the two-year-old to a store with her across the street for a snack and met defendant, who introduced himself as Pamela Bell's uncle. Defendant was forty-two years old at the time.

Around 9:30 p.m., B.H. took the two-year-old back to Pamela Bell's apartment to baby-sit for the night while the infant stayed with B.H.'s mother. When she arrived, defendant was sitting on the porch while Pamela Bell was in the apartment with her boyfriend. The three adults spent the evening talking, eating, and drinking. Pamela Bell and her boyfriend smoked marijuana.

B.H. remained in the living room with the two-year-old after Pamela Bell and her boyfriend went upstairs. Defendant left the apartment briefly before returning home and entering the living room where B.H. was located. Defendant began feeling B.H.'s legs and climbed on top of her. B.H. was unable to push him off. Defendant placed one hand over B.H.'s mouth and used the other hand to pull down B.H.'s pants.

B.H. testified that defendant placed his penis between B.H.'s legs and "it hurt." Defendant attempted to insert his penis into her vagina but that "it was on the side." B.H. testified, "[i]t didn't never go in, it was on the outside, but he thought it was in and he just kept on pushing." Defendant repeatedly told her "Let me put it in, I promise I won't come." B.H. testified that she was afraid throughout the attack.

B.H. finally pushed defendant off of her, told him she was going home, and would tell her mother what he had done. B.H. testified defendant went into the bathroom and began to cry. She left the apartment and ran home, without her shoes or jacket.

Although B.H.'s mother was not home when she arrived, B.H. related what had occurred to her aunt and to her sister. B.H. found blood on her underwear and experienced burning when she urinated.

When her mother returned, B.H.'s sister told their mother that B.H. had been raped. Their mother called 911 to summon the police and an ambulance. B.H. then told her mother of the events.

B.H. also related the events to at least two police officers, the paramedic, the emergency room doctor and nurses, and to a social worker at the hospital. Kevin J. Reese, M.D., the emergency room doctor, treated B.H. and noted that B.H.'s labia minora, the inner lips, were "acutely swollen, tender to the touch and red" and opined that the injuries "appeared to be fresh."

Detective Christopher Hunt of the Wilmington Police Department arrested defendant at Bell's apartment at approximately 2:15 a.m. and took him to the police station. Detective Hunt interviewed defendant after defendant waived his *Miranda* rights. Detective Hunt testified:

> The first question I asked him, was there anyone in the apartment except for family members? . . . The first response was that there was no one in the apartment. I asked him again and reiterated again, also there was no one there, but family members. I asked him a third time. He stated that—on the third response, that there was a little girl there baby-sitting. I asked him if he knew her and he stated no. He stated that the girl was "fast." So I asked him to explain what "fast" meant. He stated it meant grown up or trying to be an adult. I asked him if he had touched the girl in any way and he stated no. I then explained to him that she claimed that she had been raped by him and he replied again that she was being fast, that she had wanted him to kiss her. That is when the Defendant invoked his right to remain silent.

Defendant moved to dismiss the charges for insufficient evidence of actual penetration. The trial court denied the motion.

Defendant testified on his own behalf and stated that on 1 September 2001 he was living with Pamela Bell. He left to go to visit other family across town but returned later that evening. "As I opened the door [to the apartment], I heard noise and I noticed it was a boy and a girl on the sofa." The young man left out the back door of the apartment.

Defendant testified that he questioned the girl regarding whether Pamela Bell knew that she had a young man over at the apartment. "Her response was, 'none of your damn business'" and that "'I'm grown.'" As defendant was calling for Pamela Bell, B.H. left through the front door. Defendant went upstairs to sleep without telling

STATE v. BELL

[159 N.C. App. 151 (2003)]

Pamela Bell or her boyfriend what he had seen. The next thing he remembered was waking up with "guns in my face" from the Wilmington Police.

Defendant renewed and was denied his motions to dismiss. The trial court instructed on and submitted the charges of (1) first-degree statutory rape, attempted first-degree statutory rape, and not guilty of first-degree statutory rape, and (2) second-degree rape, attempted second-degree rape, and not guilty of second-degree rape. The trial court instructed the jury that for defendant to be guilty of statutory rape, the State must prove that "the victim was a child of the age of 12 years or less. A child would be 12 years of age if she had reached her 12th birthday. If she has passed her 12th birthday by even a moment, she would be more than 12 years of age."

After sending the jury in to deliberate, the jury requested re-instruction on the elements of the charges and B.H.'s date of birth. The trial court sent a copy of the jury instructions to the jury and told them to rely on their memory of the evidence regarding B.H.'s date of birth.

While the jury was deliberating, the trial court recognized that the instruction given on statutory rape was in error because the law required the victim to be "under the age of 13." As the trial court called for the jury to return for re-instruction, the court was informed that the jury had reached a verdict. The trial court did not receive or read the verdict and sealed it for appellate review.

The trial court stated to the jury:

After the jury was sent to the jury room for your deliberations, the Court has discovered that as to one of the elements of one of the offenses, I read you an erroneous statement of the law.

Now, what I am going to do is to read you a correct statement of the law, then I'm going to send you back to the jury room and let y'all talk among yourselves to see if this correct statement of the law has any bearing on your decision . . .

Ladies and gentlemen, as to that second element, that was an incorrect statement of the law and the correct statement of the law is or should have read:

Second, that at the time of the acts alleged, the victim was a child under the age of 13 years; . . .

After the new instruction, the jury deliberated for approximately fourteen minutes before returning a unanimous verdict finding defendant guilty of first-degree statutory rape and guilty of second-degree forcible rape. The original sealed jury verdict found defendant not guilty of statutory rape and guilty of second-degree forcible rape. Defendant was sentenced to concurrent sentences of 339 months to 416 months and 120 months to 153 months. Defendant appeals.

## II. Issues

Defendant contends the trial court erred in (1) allowing into evidence Detective Hunt's testimony of B.H.'s statement to him, (2) refusing to accept the original verdict, re-instructing on statutory rape, and accepting the new verdict, and (3) denying defendant's motion to dismiss for insufficient evidence.

## III. Detective Hunt's Testimony

[1] Defendant contends the trial court erred in allowing Detective Hunt to testify that on the night of the incident, "[B.H.] did state to me that he did get inside some before she pushed him off." Over defendant's objection, the trial court admitted the statement as corroborative evidence. Defendant argues that the statement is not corroborative because B.H. testified "it didn't never go in."

"Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness." *State v. Rogers*, 299 N.C. 597, 601, 264 S.E.2d 89, 92 (1980).

> In order to be admissible as corroborative evidence, a witness's prior consistent statements merely must tend to add weight or credibility to the witness's testimony. Further, it is well established that such corroborative evidence may contain new or additional facts when it tends to strengthen and add credibility to the testimony which it corroborates.

*State v. Farmer*, 333 N.C. 172, 192, 424 S.E.2d 120, 131 (1993) (citations omitted). "If the previous statements are generally consistent with the witness' testimony, slight variations will not render the statements inadmissible, but such variations . . . affect [only] the credibility of the statement." *State v. Martin*, 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983). "A trial court has 'wide latitude in deciding when a prior consistent statement can be admitted for corroborative, non-hearsay purposes.'" *State v. Lloyd*, 354 N.C. 76, 104, 552 S.E.2d 596,

617 (2001) (quoting *State v. Call*, 349 N.C. 382, 410, 508 S.E.2d 496, 513 (1998)).

The State tendered the testimony of Detective Hunt to corroborate the testimony of B.H. B.H. testified that defendant: (1) felt her legs; (2) pulled down her pants; (3) got on top of her; (4) held her down; (5) placed his penis between her legs and (6) that "it hurt;" (7) that defendant said "let me put it in, I won't come;" (8) that she felt burning between her legs; (9) that she discovered blood in her underpants although she was not having her period; and (10) that it hurt for the doctor to examine her.

When this testimony is considered along with the testimony of Dr. Reese that although there was no indication of complete penetration, there was bruising of the inner lip of the labia minora near the hymen, B.H.'s testimony could be construed that defendant did not completely penetrate her beyond the inner lips of the labia minora. The trial court is in the best position to determine whether the testimony of Detective Hunt corroborated the testimony of B.H. *See State v. Williams*, 355 N.C. 501, 566, 565 S.E.2d 609, 647 (2002). The trial court did not err in admitting Detective Hunt's testimony as corroborative evidence. This assignment of error is overruled.

## IV. Verdict

[2] Defendant contends the trial court erred in entering judgment on the verdict of guilty of first-degree statutory rape when the jury had already returned a verdict of not guilty of statutory rape. Defendant also argues error for the trial court to send the jury back for further deliberation based on new instructions. Defendant argues that such action is barred by (1) the double jeopardy clause of the United States and North Carolina Constitutions and (2) *res judicata*. We disagree.

N.C. Gen. Stat. § 15A-1237(b) (2001) requires that "[t]he verdict must be unanimous, and must be returned by the jury in open court." Here, the first verdict, based on an erroneous instruction of law, was never read in open court, never shown to the judge or either counsel, and sealed by the bailiff for appellate review. The verdict was never "returned by the jury in open court" as required by statute.

The trial court determined that new instructions on the element of the age of the victim had to be given to the jury prior to

any notice of a verdict from the jury. Although defendant contends *res judicata* applies, there had been no "final judgment on the merits" entered in the case. Defendant was not subjected to double jeopardy by the trial court not accepting the first verdict and correctly re-instructing the jury.

Defendant also contends the trial court impermissibly attempted to coerce the jury into reaching a verdict. We disagree. The trial court explained to the jury that the previous instruction was in error, re-instructed on the correct statement of law, and sent the jury back "to see if this correct statement of the law has any bearing on your decision." The jury had previously questioned the trial court regarding B.H.'s date of birth and the required elements of the offense. After fourteen minutes of continued deliberations, the jury returned a verdict of guilty of first-degree statutory rape. The trial court did not err in accepting the verdict of guilty of first-degree statutory rape and entering judgment. This assignment of error is overruled.

### V.  Motions to dismiss

Defendant contends the trial court erred in denying defendant's motions to dismiss for insufficient evidence. Defendant makes two arguments: (1) insufficient evidence of any crime by defendant and (2) insufficient evidence of penetration. We disagree.

### A.  Standard of Review

A motion to dismiss should be denied if substantial evidence exists of each essential element of the offense charged and of defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). "In ruling on a motion to dismiss, the trial court must view all of the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence." *State v. McAllister*, 138 N.C. App. 252, 259, 530 S.E.2d 859, 864, *appeal dismissed*, 352 N.C. 681, 545 S.E.2d 724 (2000) (citation omitted). "If there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958).

## B.  Defendant as Perpetrator

**[3]** Defendant presented evidence that he was not the perpetrator of the crime, but that he walked in on B.H. with another male. The existence of evidence contrary to the State's evidence is not controlling in ruling on a motion to dismiss. The crucial question is whether the State presented substantial evidence of defendant as the perpetrator.

B.H. testified that defendant raped her. She repeated this story to her aunt, her mother, the police, the paramedics and the doctors at the emergency room. This assignment of error is overruled.

## C.  Penetration

**[4]** For defendant to be guilty of rape, complete penetration need not occur. "[T]he slightest penetration of the sexual organ of the female by the sexual organ of the male" is sufficient. *State v. Johnson*, 317 N.C. 417, 435, 347 S.E.2d 7, 18 (1986), superseded by statute on other grounds in, *State v. Moore*, 335 N.C. 567, 440 S.E.2d 797 (1994) (citing *State v. Brown*, 312 N.C. 237, 244-45, 321 S.E.2d 856, 861 (1984); *State v. Robinson*, 310 N.C. 530, 533-34, 313 S.E.2d 571, 574 (1984); *State v. Stanley*, 310 N.C. 353, 366, 312 S.E.2d 482, 490 (1984)). B.H. testified that after defendant's penis was placed between her legs, he continued pushing and "it hurt." She experienced pain, burning, and found blood in her underwear when she was not having her period. Dr. Reese testified that although there was no indication of complete penetration, there was bruising of the inner lip of the labia minora near the hymen. Sufficient evidence of the penetration of "the sexual organ of the female by the sexual organ of the male" was shown. *Id.*

Further, the trial court submitted the issue of attempt in both charges. The jury found that actual penetration occurred. This assignment of error is overruled.

## VI.  Conclusion

The trial court did not err in allowing Detective Hunt to testify regarding B.H.'s statements or in re-instructing the jury with the correct statement of law and entering judgment based on the final verdict. The trial court properly denied defendant's motions to dismiss for insufficient evidence. Defendant's assignments of error are overruled.

No Error.

Judges MARTIN and LEVINSON concur.