An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-359

Filed 18 June 2025

New Hanover County, No. 21CRS53963

STATE OF NORTH CAROLINA

      v.

ASHISH SATAPATHY

Appeal by defendant from judgment entered 30 May 2023 by Judge G. Frank Jones in New Hanover County Superior Court. Heard in the Court of Appeals 19 March 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Laura H. McHenry, for the State.*

> *Tharrington Smith LLP, by Melissa H. Hill, and Lacy A. Hanson, for the defendant-appellant.*

TYSON, Judge.

Ashish Satapathy ("Defendant") appeals from a jury's verdicts and the judgment entered thereon for second-degree forcible rape. We discern no error.

## I. Background

Six families stayed together at a Kure Beach townhome for the weekend

starting on 7 May 2021. Astha, along her husband, Manish Kumar, and their daughter arrived first on Friday and chose to stay in a room located on the second floor. Madhura and Ayush Sancheti arrived next and chose the only bedroom on the first floor. Defendant and his wife, Sapna, selected the only bedroom located on the third floor. Rohit and Rimika Agarwal and the two remaining couples stayed in the other bedrooms located on the second floor.

Around 11:00 p.m. on the day of arrival, the adults began to drink alcohol. Astha, who had only consumed alcohol once previously, had approximately four to five tequila shots and a cocktail. The adults were dancing in the third floor living room when Astha's head started spinning and she began to have difficulty standing. She fell onto the couch and Defendant approached her to see if she was okay. Manish witnessed this interaction between Astha and Defendant, and he subsequently helped her downstairs to their room on the second floor and put her into bed. Manish then rejoined the others in the third floor living room. Soon after Manish left the room, Astha vomited in the bathroom before returning to the bed and passing out.

Sometime after Astha had passed out, she felt someone kissing her lips, face, cheeks, and ears. She then felt her pants and underwear being pulled down to around her knees. After her pants and underwear were pulled down, she realized someone was inserting his penis inside her. At this point she was able to open her eyes and identify the person as Defendant. After identifying Defendant as the person who was raping her, Astha said "no, no" and called out for her husband Manish, who she also

calls "Manu." Defendant continued his assault.

Astha felt paralyzed and incapable of moving Defendant away from her. Astha had never experienced this feeling before, as this was the first time she had consumed more than a few sips of alcohol. After Defendant was finished, he pulled up Astha's pants and left the room, at which point Astha passed out on the bed again.

Around 12:30 a.m., before Defendant had entered Astha's room, Rimika Agarwal's head started to hurt, and she went to her second-floor bedroom to lie down. Defendant followed her into her bedroom. Defendant then tried to come "very close to [her] chest," tried to grab her, and asked her if she was okay. Rimika pushed him away, but Defendant stated he wanted to "sleep in [the] bed near [her]." Rimika testified she felt shocked and scared and asked Defendant to leave approximately five or six times before he finally left the room.

Defendant entered Madhura and her husband's first floor bedroom at around 3:00 a.m., at which point Madhura was awake and laying on her side. Defendant got into bed with Madhura and her husband, then "grabbed [her] from the backside to [her] legs." Defendant then moved his hand up from her stomach towards her chest. She told Defendant what he was doing was wrong and to go away. At this time, Defendant left Madhura's room. Defendant then returned to the room, and Madhura told him to leave a second time. After Defendant left the second time, Madhura locked the door. Madhura then noticed an extra cellphone on her nightstand and realized it was neither hers nor her husband's. Presuming it was Defendant's cellphone,

Madhura took a picture of it to confirm that Defendant had been in the room.

Around 3:00 a.m., Manish entered the room he was staying in with his wife. Astha recognized Manish, and they had intercourse. At this time, Astha was still "not in her senses" and was unable to tell Manish about her encounter with Defendant. When Astha woke up in the morning, she woke Manish to tell him what had occurred the night before with Defendant. Astha and her husband were shocked, angry, bewildered, and unsure of how to proceed. After speaking to her sister on the phone, Astha and Manish decided to tell the group what had happened.

Astha and Manish gathered in a second-floor bedroom on the morning of 8 May 2021 with the other adults who were awake to explain what Defendant had done. Defendant was asleep and not with the group, but his wife, Sapna, was present. During this conversation, Madhura and Rimika told the group Defendant had also come into their rooms during the night and tried to get into bed with them. After hearing what happened to Astha, Rimika, and Madhura, Sapna woke Defendant and brought him to the group.

Defendant joined the group and asked what had happened. Manish responded Defendant had sexually assaulted Astha. Defendant said Ashta was hallucinating or imagining it. The other two women then came forward and told Defendant he had also entered their rooms.

Defendant left the room but returned a few minutes later and told all three women, "if you think I have done this, I'm sorry." Manish and the others did not

believe Defendant's apology was sincere, because Defendant failed to take any accountability. The group threatened to call the police. During this encounter, Manish had begun to videorecord the conversation. All of the couples left the beach house on Saturday. Madhura still possessed Defendant's cellphone, so they gave the phone to Rohit to return to Defendant.

Astha went to the Novant New Hanover Hospital emergency department to get a rape kit performed on Saturday morning. She was evaluated by Colleen Mistovich ("Nurse Mistovich"), a registered nurse and a sexual assault nurse examiner (SANE). Medical personnel collected evidence by swabbing Astha's face, lips, ears, and vaginal area. She was also given medication to prevent pregnancy. Hospital staff asked if Astha wanted to file a police report, but the couple wanted more time to think about their decision, so the staff provided them with the phone number for the Rape Crisis Center. The next morning, the couple called the Rape Crisis Center and discussed pressing charges.

Defendant met the other husbands who went on the trip at Thomas Brooks Park in Cary on Sunday, 9 May 2021. Manish recorded the interaction, which was mostly spoken in Hindi, on his cellphone. Defendant approached the group, fell to his knees, admitted he had made a mistake, and begged for forgiveness. Defendant said he had gotten "carried away" due to the alcohol and accepted responsibility for raping Astha and going into the bedrooms of Rimika and Madhura. Defendant said he was willing to accept the truth, and he offered to leave the country. Defendant

also offered to accept any punishment from the men if they did not "go to the police and tell the truth."

Astha and Manish contacted the police about the rape on 10 May 2021. Kure Beach Detective Jamie S. King drove to Cary and met with them for an interview the next day. After interviewing Astha and Manish, Detective King interviewed the other witnesses, reviewed the results of the rape kit, and examined and photographed the townhouse. Detective King also listened and watched the videos and recordings taken by Manish.

Defendant was charged with second-degree forcible rape by force and against the victim's will, in violation of N.C. Gen. Stat. § 14-27.22(a)(1) (2023) on 27 May 2021. Defendant was ultimately arrested on 31 May 2021 in Little Elm, Texas, and was extradited to New Hanover County. Defendant was indicted on 9 August 2021. On 9 January 2023, a superseding indictment was returned against Defendant for second-degree forcible rape of a mentally incapacitated and physically helpless victim, in violation of N.C. Gen. Stat. § 14-27.22(a)(2) (2023).

A trial was held on 20 February 2023. Nurse Mistovich, who had collected the materials for the rape kit, qualified and testified as an expert witness. Nurse Mistovich testified when she was evaluating Astha, Astha had told her Defendant had penetrated her vagina with his penis. Nurse Mistovich indicated on the sexual assault data form that Astha's attacker was a known, Indian male. Nurse Mistovich also testified she had observed injuries to the posterior fourchette of Astha's vaginal

opening, which is the primary area for injury during a sexual assault. Sarah Ellis, the State's expert in forensic biology, testified "[b]ased on the quality of [Defendant's] DNA" found in Astha's vaginal swab, it was likely transferred via "direct contact." Defendant's DNA was also found on the swab taken from Astha's cheek, underwear, and feminine pad.

At trial, Astha identified Defendant and recounted that, during the assault, she was unable to move her body, had stated "no" twice, and had called out for her husband.

Manish Kumar testified he believed Defendant was insincere during the first conversation at the beach house, which prompted him to begin recording their conversation. Manish testified Defendant kept changing his position on the subject, first stating Astha was hallucinating. Later, when Rimika and Madhura shared their similar experiences, Defendant began to apologize. Manish testified Defendant's apologies also changed from "if you think that I have done this, then I'm sorry" to "I'm sorry for what I have done to these three girls."

Manish also testified about the confrontation with Defendant in the park, which was mostly spoken in Hindi. He stated Defendant had met them in the park, fell to his knees, begged for forgiveness, pleaded with them to not to go to the police, and admitted he had raped Astha and had attempted to rape Rimika and Madhura.

During Rimika's testimony, she confirmed Astha did not normally drink and the first time she had seen Astha drink was at the beach house. Rimika testified

Defendant had attempted to rape her, and stated he did not appear to be impaired at the time. Rimika also testified Defendant kept changing his recount of events during the first confrontation at the beach house.

Rohit Agarwal testified he had planned the meeting in the park with Defendant and the other men because he had known Defendant for a long time and wanted to give him a fair chance to explain himself to the group. Rohit also recalled Defendant came to the park, fell to his knees, asked for forgiveness, admitted he had made a mistake, and got carried away. Rohit confirmed Defendant admitted to raping Astha and the conversation was not threatening.

Madhura Sancheti also testified Defendant had attempted to rape her and had left his cellphone on her nightstand. She remembered Defendant eventually admitted to the interactions with the three women during the conversation at the beach house on 8 May 2021.

Arpit Singhai confirmed Astha does not consume alcohol, and when he saw her drinking at the beach it was "probably the first time [he] saw her taking some drinks." He also said she was in a "passed-out state where she needed assistance to even get up." He further testified remembering Defendant appeared to be "in control." Arpit stated Defendant was reluctant to admit he remembered anything during the conversation at the park on 9 May 2021, and he confirmed Defendant's recount of the events changed. Arpit stated Manish asked Defendant, "Do you accept that you raped – raped Astha" and Defendant responded, "Yes."

The jury convicted Defendant of second-degree forcible rape. The trial court sentenced Defendant as a prior record level I offender in the presumptive range to an active term of imprisonment for 60 to 132 months, ordered him to register as a sex offender, and delayed decision on imposing satellite-based monitoring. Defendant appeals.

## II. Jurisdiction

Jurisdiction lies in this court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. Lay Opinion Testimony

Defendant argues the trial court committed plain error by allowing five witnesses to provide lay opinion testimony regarding the truthfulness and sincerity of Defendant's statements regarding whether he committed the offenses against the three women.

### A. Standard of Review

This Court reviews a trial court's decision to admit lay opinion testimony for an abuse of discretion. *State v. Belk*, 201 N.C. App. 412, 417, 689 S.E.2d 439, 442 (2009). Defendant failed to object to the challenged instruction at trial. Any error must be reviewed under the plain error rule. N.C. R. App. P. 10(a)(4). *See also State v. Jordan,* 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

The plain error standard of review applies to unpreserved evidentiary errors. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "Under the plain

- 9 -

error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *Jordan*, 333 N.C. at 440, 426 S.E.2d at 697 (citation omitted).

Plain error exists "only in exceptional cases where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Hammett*, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006) (citation and internal quotation marks omitted).

## B. Analysis

Rule 701 of the North Carolina Rules of Evidence provides as follows:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C. Gen. Stat. § 8C-1, Rule 701 (2023); *State v. Davis*, 321 N.C. 52, 56, 361 S.E.2d 724, 726 (1987). Rule 701(b) permits lay opinion testimony if the testimony is helpful to the jury in "clarifying a witness' testimony or helpful to determine a fact in issue." *Davis*, 321 N.C. at 56, 361 S.E.2d at 726 (1987). Lay opinions are admissible if they are "based on first-hand knowledge . . . and helpful to the jury." *Id.*

In *Davis,* the court permitted two witnesses to provide lay testimony about their opinion of the defendant's knowledge of right and wrong during the commission

of the crime. *Id.* Both witnesses had reasonable opportunities to form opinions regarding the defendant's sanity based upon their personal experiences with defendant at a time sufficiently proximate to the crime. *Id.*

Here, all the witnesses testified they had reasonable opportunities to form opinions regarding Defendant's sincerity and character prior to, and close in time to, the commission of the crimes. The witnesses had been friends with Defendant for several years and had socialized together frequently. They were also present and observed Defendant before and after the commission of the crime the night it occurred and during the two conversations following the alleged crime. The testimony of these witnesses is also helpful to the jury, as it provides relevant cultural context to some of Defendant's statements and actions. The testimonies of these individuals are particularly important as a large part of the conversations were spoken in Hindi. The witnesses' opinions are based on first-hand knowledge and are helpful for the jury to understand Defendant's state of mind before, during, and after the night of 7 May 2021.

Even under the standard of abuse of discretion, the lay opinion testimony here would be admissible as shorthand statements of fact. *See State v. Eason*, 336 N.C. 730, 747, 445 S.E.2d 917, 927 (1994) (holding comment that "'he was enjoying what he was doing' represent[ed] an instantaneous conclusion of the witness based on his perception of defendant's appearance, facial expressions, mannerisms, etc." and was thus admissible as a shorthand statement of fact); *State v. Loren,* 302 N.C. 607, 609,

276 S.E.2d 365, 367 (1981) (holding that witness' opinion that defendant "'was acting like he was trying to hide something'" was admissible as shorthand statement of fact).

Moreover, there is no indication the jury gave significant weight to any of the lay witnesses' opinion testimony or any indication their testimony had a probable impact on the outcome of the trial. *State v. Thomas*, 295 N.C. App. 269, 277-78, 905 S.E.2d 106, 112-13 (explaining under plain error review, this Court determines whether admission of the lay opinion testimony had a probable impact on the jury finding a defendant guilty).

"[T]he jury is charged with determining what inferences and conclusions are warranted by the evidence." *State v. Buie*, 194 N.C. App. 725, 730, 671 S.E.2d 351, 354 (2009) (citation omitted). Astha's own testimony about what had happened in her bedroom at the beach townhouse, the evidence from the rape kit, and her report of rape to law enforcement and Nurse Mistovich's testimony constitute sufficient evidence to support the jury's decision, independent from the other witnesses' testimony. Defendant has also failed to show by admitting this testimony, the court committed an error so prejudicial that justice could not have been done. *Hammet,* 361 N.C. at 98, 637 S.E.2d at 522. Defendant's argument does not meet the high standard of plain error and is overruled.

## IV. Sufficiency of the Evidence

Defendant argues the trial court erred in failing to dismiss the charges of second-degree rape. Specifically, Defendant contends the evidence fails to establish

defendant had inserted his penis into the victim's vagina and he knew or should have known the victim was impaired.  We disagree.

### A.  Standard of Review

When ruling on a defendant's motion to dismiss, the trial court must "determine whether there is substantial evidence [(1)] of each essential element of the offense charged," and (2) that the defendant is the "perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Cummings*, 46 N.C. App. 680, 683, 265 S.E.2d 923, 925, *aff'd*, 301 N.C. 374, 271 S.E.2d 277 (1980) (citations omitted).  "[T]his Court reviews the denial of a motion to dismiss *de novo*." *State v. Harper*, 285 N.C. App. 507, 510, 877 S.E.2d 771, 776 (2022).

The law is well settled that when reviewing challenges to the sufficiency of the evidence in criminal trials, "we must view the evidence in the light most favorable to the State." *State v. Benson,* 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992).

### B.  Analysis

Second-degree rape requires proof the defendant engaged in vaginal intercourse with the victim either by force and against the victim's will or when the victim was mentally incapacitated, physically helpless, or had a mental disability, and the defendant knew or should have known of the victim's condition.  N.C. Gen. Stat. § 14-27.22(a)(2) (2023).

### 1. *Incapacity*

Our Supreme Court has addressed the incapacity and force requirement and explained:

> In the case of a sleeping, or similarly incapacitated victim, it makes no difference whether the indictment alleges that the vaginal intercourse was by force and against the victim's will or whether it alleges merely the vaginal intercourse with an incapacitated victim. In such a case sexual intercourse with the victim is *ipso facto* rape because the force and lack of consent are implied in law.

*State v. Moorman*, 320 N.C. 387, 392, 358 S.E.2d 502, 506 (1987). Force is implied in this case but is also reinforced by Astha telling Defendant during the acts "no, no" while he was on top of her. The Court in *Moorman* also asserts being in a state of sleep is sufficient to show incapacitation. *Id.* Defendant agrees Astha was asleep when he entered the room.

Astha's testimony and the testimony of the other witnesses also provides evidence Astha was mentally incapacitated and physically helpless during the night of the rape due to intoxication. Arpit testified Astha was so intoxicated she was in a passed-out state where she needed assistance to even get up. Other witnesses corroborated the story. Defendant himself even approached Astha to see if she was okay when she fell onto the couch after consuming multiple alcoholic beverages. Defendant also witnessed Manish, her husband, helping her downstairs to their bedroom due to her incapacitated state. A reasonable juror could conclude Defendant knew or should have known Astha was physically helpless or mentally incapacitated

that night.

## *2. Penetration*

For defendant to be guilty of rape, complete penetration need not occur. "The slightest penetration of the sexual organ of the female by the sexual organ of the male" is sufficient. *State v. Johnson*, 317 N.C. 417, 435, 347 S.E.2d 7, 18 (1986), *superseded by statute on other grounds in*, *State v. Moore*, 335 N.C. 567, 440 S.E.2d 797 (1994); *State v. Bell*, 159 N.C. App. 151, 158, 584 S.E.2d 298, 303 (2003) (citations omitted). Here, there is evidence of vaginal intercourse and penetration.

Nurse Mistovich testified Astha told her that Defendant had penetrated her vagina with his penis during the evaluation. Nurse Mistovich also found evidence of an injury to Astha's vaginal opening, an area where injury is most commonly sustained by sexual assault victims. The State's expert witness in forensic biology testified Defendant's DNA was found inside of Astha's vagina.

Astha also provided testimony tending to show Defendant came into her room, began to kiss her while she was passed out, pulled down her pants and underwear, and inserted his penis. She denied penetration in her anus and mouth, and she also denied penetration by any other means aside from Defendant's penis. Astha also testified she protested "no, no" and called out for her husband while Defendant was assaulting her.

The State presented substantial evidence of Defendant as the perpetrator. Astha testified Defendant raped her. She repeated the story to her husband, her

friends, the medical staff at the hospital, and to the police. *Bell*, 159 N.C. App. at 158, 584 S.E.2d at 303 (holding the victim's testimony, which was about her retelling the story to her aunt, mother, police, paramedics, and doctors, provided substantial evidence of Defendant as the perpetrator).

Viewing the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in favor of the State, sufficient evidence existed for the jury to find Defendant engaged in vaginal intercourse against the victim's will while she was incapacitated or physically helpless. The trial court correctly denied Defendant's motion to dismiss.

## V. Conclusion

The trial court did not err in allowing the admission of lay opinion testimony about Defendant's sincerity and actions surrounding the crime. The trial court properly denied Defendant's Motion to Dismiss for insufficient evidence. Defendant's assignments of error are overruled. *It is so ordered.*

NO ERROR.

Judges STADING and FREEMAN concur.

Report per Rule 30(e).